ACCEPTED
04-14-00609-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/20/2015 4:39:52 PM
KEITH HOTTLE
CLERK

No. 04-14-00609-CV

# COURT OF APPEALS
## FOURTH COURT OF APPEALS DISTRICT OF TEXAS
## SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
04/20/2015 4:39:52 PM
KEITH E. HOTTLE
Clerk

### IRMA LEMUS AND MANUEL LEMUS, JR.,

Appellants,

v.

### JOHN RENE AGUILAR, JOHNNY B.WELLS, LAURA ASHLEY WELLS, AND JOHNNY MONTOYA GARZA,

Appellees.

Appeal from the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-00251
Honorable Antonia Arteaga, Judge Presiding

## BRIEF FOR APPELLANTS

**ANA LAURA HESSBROOK**
4100 N.W. Loop 410 Ste 105
San Antonio, Texas 78229
Tel: (210) 706-9466
Fax: (210) 706-9467
BY:_____
ANA LAURA HESSBROOK
State Bar No. 00791481
Email: hessbrook@sbcglobal.net
Attorney for Appellants

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

## ATTORNEYS:

ANA LAURA HESSBROOK
ATTORNEY AT LAW
Email: hessbrook@sbcglobal.net
4100 N.W. Loop 410 Ste 105
San Antonio, Texas 78229
Tel. (210)706-9466
Fax (210)706-9467
Attorney for Appellants, IRMA LEMUS AND MANUEL LEMUS, JR.

ANITA J. ANDERSON
ATTORNEY AT LAW
P.O. BOX 830722 SAN ANTONIO, TEXAS 78283
Via Fax Facsimile 210-533-0989
Tel. (210) 533-8726
Fax. (210) 533-0989
Attorney for Appellees, JOHN RENE AGUILAR, JOHNNY B. WELLS, LAURA ASHLEY WELLS, and JOHHNY MONTOYA GARZA

## APPELLANTS:

IRMA LEMUS AND MANUEL LEMUS, JR.

## APPELLEES:

JOHN RENE AGUILAR, JOHNNY B. WELLS, LAURA ASHLEY WELLS, and JOHNNY MONTOYA GARZA

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL...............................2

INDEX OF AUTHORITIES.............................................4

STATEMENT OF THE CASE..........................................7

STANDARD OF REVIEW..............................................7

FACTUAL BACKGROUND...........................................10

ISSUES ON APPEAL.................................................16

CONCLUSION........................................................66

PRAYER..............................................................67

# INDEX OF AUTHORITIES

1. *Anderson v. Gilliland,* 684 S.W.2d 673 (1985)............................................................65

2. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d. 618, 637 (Tex. 1996)...........................................................................................30

3. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex. 1992).......................................62

4. *Benavidez v. Laredo National Bank,* 91 S.W.2d 372, 374 (Tex. Civ.App.—Eastland 1936 n.w.h.)................................................................................................33

5. *BMC Software Belgium v. Marchand,* 83 S.W.3d, 789, 794 (Tex. 2002)..................9

6. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998)..........................................8, 30

7. *Bradshaw v. Naumann,* 528 S.W.2d 869, 875 (Tex. Civ. App.—Austin 1975, writ dism'd)..................................................................................................60

8. *Carrollton v. RIHR Inc.,* 308 S.W.3d 444, 455 (Tex. App.—Dallas 2010, pet. denied)...................................................................................................32

9. *City of Keller v Wilson,* 168 S.W.3d 802, 827, 48 Tex. Sup. Ct. J. 848 (Tex. 2005).....67

10. *Cockrell v. Tex. Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672 (1956)............25, 26

11. *Conway v. Durell,* 13-10-00614-CV, WL 3043100, (Tex. App.—[13th Dist.] Corpus Christi, 2012)..............................................................................................20

12. *Croucher v. Croucher,* 660 S.W.2D 55, 58 (Tex. 1983)............................................29

13. *Dace v. Dace* (Tex. App. –Houston[1st Dist.] July 31, 2008...............................16, 26

14. *Dakan Dakan,* 83 S.W.2d 345 (Tex. 1976)...............................................................64

15. *Dallas Cent. Appraisal Dist. V. Seven Inv. Co.* 835 S.W. 2d 75, 77 (Tex. 1997).........29

16. *Dauson v. Tumlinson,* 150 Tex. 451, 242 S.W.2d 174, 178 (Tex. App.—Corpus Christi, 1982, no writ).............................................................................................30

17. *Dorman v. Arnold,* 932 S.W.2d 225, 227 (Tex. App. Texarkana, 1996, n.w.h.).............................................................................................13, 21, 29, 32

18. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237 (2001).............................................43, 46

19. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985)...........8, 53

20. *Estate of Grey,* 279 S.W.2d 936, 939 (Tex. Civ. Ap. –El Paso 1955, writ ref'd n.r.e.).....................................................................................................61

21. *Etan Indus.v. Lehmann,* 359 S.W.3d 620, 624 (Tex. 2011)......................................31

22. *Fitzgerald v. Schroeder Ventures II, L.L.C.,* 345 S.W.3d 624, 627 (Tex. App.—San Antonio 2011, no pet.)......................................................................................8, 30

23. *Forrest v. Elboar,* 424 S.W.2d 899, 907 (Tex. 1968)...............................................8

24. *Garcia v. Garza,* 311 S.W. 3d 28 (Tex. App. 2010).................................................18

25. *Garza v. Alviar,* 395 S.W.2d. 821 (Tex. Sup. 1965).................................................29

26. *Graham v. Prochaska,* No. 04-12-00755-CV (Tex. A00.—San Antonio, 2013).........25

27. *Green Int'l, Inc. v. Solis,* 915 S.W.2d 384, 390 (Tex. 1997)....................................32

28. *Hardin v. State,* 254 S.W.2d 898, 901 (Tex. Civ. App.—Amarillo 1952, no writ).......55

29. *Hartley v. Frosh,* 6 Tex. 208, 55 Am. Dec., 772 (Texas)..........................................67

30. *Harmon v. Schmitz,* 39 S.W.2d 587, 589 (Tex. Civ. App. 1931)...............................32

31. *Hernandez v. Del Ray Chem. Int'l.,* 56 S.W.3d 112, 11 (Tex. App. –Houston [14thDist.] 2001, no pet.).................................................................................................63

32. *Hillen v. Williams,* 60 S.W. 997, 25 (Tex. Civ. App. 268 (Tex. App. 1901)...............69

33. *Hogget v. Brown*, 971 S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, no pet.).............................................................................................42

34. *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App. –Fort Worth 1998, no pet.)........60, 61

35. *Houchins v. Devon Energy Production Co.*, (Tex. App. –Houston [1st Dist.] Oct. 15, 2009...............................................................................................16, 25

36. *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d. 78, 88-87 (Tex. 2008)..................61

37. *In re Estate of Johnson*, 340 S.W.3d 769 (Tex. Civ. App.—San Antonio, 2011, aff'd)......................................................................................................58

38. *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.-Houston [1st Dist.] 2003, no pet.).........8

39. *In the Estate of Jenkins*, 2006 Tex. App. WL 14526669 May 25, 2006, (Tex. App. [2nd Dist.] Fort Worth).....................................................................................64, 68

40. *J.M. Davidson, Inc. V. Webster*, 128 S.W. 3d. 223, 229 (Tex. 2003).................14, 22

41. *Johnson & Higgins of Tex., Inc. v. Kenne Co. Energy, Inc.*, 962 S.W.2d. 507, 514 (Tex. 1990)........................................................................................................21

42. *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968)...................................................5

43. *Lindsay v. Clayman*, 151 S.W.2d 345, 351 (Tex. 1975).....................................65

44. *Lott v. Dashiell*, 233 S.W. 1103 (Tex. Civ. App. –San Antonio, 1921).....................26

45. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991).........................15, 22, 23, 24

46. *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex. App.—Houston [14th Dist.] 1997, no writ)........................................................................................................53

47. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009).....................................................................................................30, 31

48. *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App.—Houston [1st Dist.] 1994, writ denied)......................................................................................................53

49. *Mungia v. VIA Metropolitan Transit*, No. 04-13-00549-CV (Tex. App.—San Antonio, April 9, 2014, no pet.).................................................................................30

50. *Noell v. Crow-Billingsley Air Park Lts. P'ship*, 233 S.W.3d 408, 415 (Tex. App.-Dallas 2007, pet. denied)......................................................................................16

51. *Pace v. McFwen*, 574 S.W.2d. 792 (Tex. Civ. App.—El Paso 1978, writ ref. n.r.e.)................................................................................................17, 27

52. *Peterson v. Weiner*, 71 S.W.2d 544, 546 (Tex. Civ. App. San Antonio, 1934, writ ref'd).......................................................................................................21

53. *Placer Energy Corp. v. E.S. Oil Co.*, 692 S.W. 2d 197, 199-200 (Tex. App.—Fort Worth 1985, no writ)...........................................................................

54. *Republic National Bank of Dallas v. Stetson*, 390 S.W.2d 257 (Tex. 1965)............28

55. *Robinson v. Garcia*, 5 S.W.3d 348, 351-352 (Tex. App.—Corpus Christi, 1999, pet. denied)....................................................................................................62, 63

56. *Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, (Tex. App. –Tyler 1006 pet. denied)........................................................................................................33

57. *Schroeder v. Brandon*, 141 Tex. 319, 172 S.W.2d 488, 491 (1943)......................42

58. *Sharp v. Stacy*, 535 S.W.2d 345 (Tex. 1976)..................................................65

59. *Slaughter v. Qualls*, 162 S.W. 2d 671, (Tex. 1942)...............................11, 12, 18

60. *Stewart Title Gar. Co. v. Sterling*, 822 S.W.2d 11 (Tex. 1991).............................33

61. *Strayhorn v. Raytheon Essysleus,* 101 S.W. 2d 558, 572 (Tex. App. –Austin 2003, pet. denied)............................................................................................................29

62. *Tanox, Inc. v. Akin,  Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)..............................................32, 34, 54, 64

63. *Theriot  v.  Smith,*  263  S.W.2d  181,  183  (Tex.Civ.App.—Waco,  writ dism'd)..............................................................................................................13, 21

64. *Thompson v. Dart,* 746 S.W.2d 821, 825 (Tex. App.—San Antonio, 1988, no writ)......................................................................................................19, 27, 28

65. *Tomlinson v. The Estate of Jesee Lawhon Theis, Deceased,* No. 03-07-00123-CV (Tex. App.—Austin, 2008)...............................................................................................61

66. *Troxel v. Bishop,* 201 S.W.3d. 290, 297 (Tex.App.—Dallas 2006, no pet.)..............30

67. *Turcotte  v.  Trevino,*  499  S.W.ED  705,  712  (Tex.Civ.App.—Corpus  Christi  1973, n.r.e.).........................................................................................................13, 21, 22

68. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334, 42 Tex. Sup. Ct. J. 43 (Tex. 1998),  cert.  denied,  526  U.S.  1040,  143  L.Ed.  2d  500,  119  S.Ct.  1336 (1999))..........................................................................................................64, 67

69. *Vasquez v. Vazquez,* 973 S.W.2d 330, 331 (Tex. App.—Corpus Christi, 1998, pet. denied)............................................................................................................21

70. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003)................................................9

71. *Xtria L.L.C. v. Intern. Ins. Alliance. Inc.,* 286 S.W.3d 583, 594 (Texas)........34, 54, 64

72. *Werline v. E. Tex. Salt Water Disposal Co.,* 209 S.w.3d 888, 898 (Tex. App.—Texarkana 2006), *aff'd,* 307 S.W.3d 267, 268 (Tex. 2010)......................................34, 53, 54

## TEXAS STATUTES AND CODES

Tex. Bus. & Com. Code 26.01....................................................................................30
TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (a) (4) (5) (2002)......................15, 17, 21
TEX. CIV. PRAC. & REM. CODE ANN. § 37.008...........................................................18
TEX. CIV. PRAC. & REM. CODE ANN. §37.009...............................................29, 35, 62
Texas Code of Judicial Conduct Canon 3 B (2)...........................................................46
Texas Code of Judicial Conduct Canon 3 B (5)...........................................................46
Texas Code of Judicial Conduct Canon 3 B (6)...........................................................46
Tex. Prop. Code § 5.002 .........................................................................................18
Tex. Prop. Code § 5.003 (a) and (b)......................................................................... 18
Tex. Prop. Code § 5.021.................................................................................17, 27, 55, 69
Tex. Prop. Code § 5.023...........................................................................,,,.......17, 55
Tex. Prop. Code § 5.041.........................................................................................17
Tex. Prop. Code § 13.000 (b).............................................................................17, 58
Tex. Prop. Code § 11.003.........................................................................................26
Tex. Prop. Code. § 13.001......................................................................................17, 55
Tex. Prop. Code. § 13.002......................................................................................17, 55
Tex. Prop. Code § 22.021.........................................................................................65
Tex. Prop. Code § 71.005.........................................................................................23
Tex. R. App. P. 44.1 (a ) (1)...........................................................37, 53, 54, 56, 57
Tex. R. App. P. 44.1(a ) (2).....................................................................................53

Tex. R. App. P. 44.1 (b)..................................................................53
Tex. R. App. P. 59.1......................................................................14
Tex. R. of Evid. 103(a)..................................................................52
Tex. R. of Evid. 611 (a).................................................................49
Tex. R. of Evid. 661(a) .................................................................37
Tex. R. of Evid. 702................................................................37, 40
Tex. R. of Evid. 902 (8)................................................................55

No. 04-14-00609-CV

# COURT OF APPEALS
## FOURTH COURT OF APPEALS DISTRICT OF TEXAS
## SAN ANTONIO

### IRMA LEMUS AND MANUEL LEMUS, JR.,

Appellants,

v.

### JOHN RENE AGUILAR, JOHNNY B.WELLS, LAURA ASHLEY WELLS, AND JOHNNY MONTOYA GARZA,

Appellees.

Appeal from the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-00251
Honorable Antonia Arteaga, Judge Presiding

### BRIEF FOR APPELLANTS

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS, FOURTH COURT OF APPEALS DISTRICT, SAN ANTONIO, TEXAS:

Now come Irma and Manuel Lemus ("Appellants"), Appellants herein and Defendants in the trial court, and respectfully submit this Brief for the purpose of appealing the final judgment signed on September 23, 2014 in favor of Plaintiffs in this cause.

## A.

## STATEMENT OF THE CASE

This case arises out of a suit for declaratory judgment and trespass to try title with regard to a handwritten document titled "Will" which Appellees contend is in fact a gift deed. It further concerns the validity of a Warranty Deed dated January 7, 2009, for the same property, executed after the March 11, 2005 handwritten document. Lastly, the case involves improvements made on the subject property by the grantees of the subsequent Warranty Deed dated January 7, 2009.

## B.

## STANDARD OF REVIEW

In an appeal from a bench trial, the Court of Appeals reviews a trial court's conclusions of law as legal questions, de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand, 83 S.W.3d, 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d 609, 611 (Tex. App.-Houston [1st Dist.] 2003, no pet.).*

Abuse of discretion standard of review results in reversal if a review of the entire record demonstrates that the error probably caused the rendition of an improper judgment.

In analyzing a trial court judgment, "a trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Appellants argue that the reviewing court must consider only the evidence and inferences tending to support the trial court's finding disregarding all contrary evidence and inferences.

The appellate court reviews an award of attorney's fees under a specified statute by a trial court "de novo" based on an abuse of discretion standard. (*Fitzgerald v. Schroeder Ventures II, L.L.C.*, 345 S.W.3d 624, 627 (Tex.App.—San Antonio 2011, no pet.) Whether a trial court abused its discretion is determined if the trial court ruled "arbitrarily, unreasonably, or without regard to guiding legal principles." (*Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

An appellate court reviews the trial court judge's actions to determine reversible error in an abuse of discretion standard. (*Forrest v. Elboar*, 424 S.W.2d 899, 907 (Tex. 1968). A trial court judge abuses its discretion when it acts arbitrarily and unreasonably. (*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

A legal sufficiency challenge may only be sustained when:

(1) the record lacks evidence of a vital fact;

(2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;

(3) the evidence on record to prove vital fact is no more than a mere scintilla; or

(4) the evidence establishes conclusively the opposite of a vital fact.

*In the Estate of Jenkins*, 2006 Tex. App. WL 1452669 May 25, 2006, (Tex. Crt. App. [2nd Dist.] Fort Worth) ;(Citing *Uniroyal Goodrich Tire Co.* v. Martinez, 977 S.W.2d 328, 334, 42 Tex. Sup. Ct. J. 43 (Tex. 1998), cert. denied, 526 U.S. 1040, 143 L.Ed. 2d 500, 119 S. Ct. 1336 (1999)

## C.
## FACTUAL BACKGROUND

The Plaintiffs in this case are the grandchildren of Elvira Garibay Aguilar, named John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, who were the children of

the Elvira Garibay Aguilar's daughter Annette Wells. Johnny Montoya Garza is also a Plaintiff who was the "partner" of Elvira Garibay Aguilar. The grandchildren were orphaned after their parents died in a motorcycle accident. The grandchildren were then primarily raised by Elvira Garibay Aguilar. Elvira Garibay Aguilar had 5 children, appellant, Irma Lemus, John David Aguilar, twin Nanette Aguilar, twin Annette Aguilar, and Ms. Irene Aguilar Lambert.

The dispute arises and is concentrated on the real property 106 Cameo San Antonio, Texas 78214. Elvira Garibay Aguilar was awarded 106 Cameo San Antonio, Texas 78214 by her ex-husband as part of the property division in their divorce in approximately 1983. In 1985, Elvira Garibay Aguilar met Johnny Montoya Garza and later in 1986, Johnny Montoya Garza began to cohabitate with Elvira Garibay Aguilar. In 1990, the grandchildren were placed in Elvira Garibay Aguilar's custody and Johnny Montoya Garza assisted in the rearing of the grandchildren. Initially, 106 Cameo San Antonio, Texas 78214, a single-family residence was a one-story home, and eventually a second floor was added with the assistance of a loan from Bank of America for approximately $30,000. Elvira Garibay Aguilar and Johnny Montoya Garza were never legally married. Although Johnny Montoya Garza had asserted in a prior lawsuit that he was the spouse of Elvira Garibay Aguilar, that issue was resolved negatively in a prior lawsuit via a Motion for Summary Judgment.

As the grandchildren became older, Elvira Garibay Aguilar began to have difficulty in supervising and raising them. Laura Ashley Wells moved-out at the age of approximately 16 years old and moved to Boerne with her aunt and uncle, Irma and

Manuel Lemus. John Rene Aguilar moved-out on his own as well. The only grandchild left at 106 Cameo San Antonio, Texas 78214 was Johnny B. Wells.

On March 11, 2005, according to the testimony of Johnny Montoya Garza, a handwritten document titled "Will of Johnny Montoya Garza and Elvira Garibay Aguilar was prepared. This handwritten document was actually handwritten according to the testimony of Johnny Montoya Garza by his hand, however, he testified that he and Elvira Garibay Aguilar sat down together when he wrote it. In addition, the handwritten document was allegedly signed by both of them according to Johnny Montoya Garza. Johnny Montoya Garza was the only witness to the "Will of Johnny Montoya Garza and Elvira Garibay Aguilar."

Additionally, Johnny Montoya Garza testified that the document titled "Will of Johnny Montoya Garza and Elvia Garibay Aguilar" was put away and that Johnny and Elvira were to make the document "legal" at some future date. By 2007, Johnny Montoya Garza moved out on his own and Elvira Garibay Aguilar and John B. Wells, the youngest grandchild, moved in with Nanette Aguilar. The other two grandchildren John Rene Aguilar and Laura Ashley Wells lived elsewhere. The real property 106 Cameo San Antonio, Texas was vacant in the years of 2006, 2007 and 2008.

John David Aguilar, Ms. Aguilar's son, assisted his mother in moving to Nanette Aguilar's home in 2006, and assisted his mother in the registration in the Normandy Terrace Nursing home on November 15, 2008. John David Aguilar is the same son who acquired a Durable Power of Attorney signed by Elvira Garibay Aguilar on or about November 15, 2008, and who claimed two months later that Elvira Garibay Aguilar lacked

the mental capacity to sign a Warranty Deed on January 7, 2009. He was involved in the first lawsuit regarding the same instruments which are the subject of this suit.

After Elvira Garibay Aguilar was placed at the Normandy Terrace Nursing Home, Irma Lemus visited and cared for her mother. Occasionally, Irma Lemus would take her mom out of the nursing home for visits. Elvira Garibay Aguilar had expressed to Irma Lemus her concern about the house on 106 Cameo and her belief that Johnny Montoya Garza would somehow obtain some interest in the house.

On one the outings with her daughter, Elvira Garibay Aguilar signed a Warranty Deed granting ownership of 106 Cameo San Antonio, Texas 78214 to Irma Lemus and Manuel Lemus, Jr. Elvira Garibay Aguilar signed and acknowledged a Warranty Deed in the presence of a Notary Public, of the State of Texas, Kimberly L. Wynns on January 7, 2009 at a Starbucks Coffee Shop. The Warranty Deed had been prepared at the law office of West & West Attorneys, P.C. 2929 Mossrock, Suite 204 San Antonio, Texas 78230. Kimberly L. Wynns, Notary Public, and North O. West, an attorney from the law firm of West & West testified as to the issue of "mental capacity" of Elvira Garibay Aguilar. Kimberly L. Wynns testified that Elvira Garibay Aguilar did have the sufficient mind at the time of the execution on January 7, 2009 to understand the nature of the effect of conveying 106 Cameo San Antonio, Texas 78214 while she interacted with her during this transaction. She stated she had no concerns about her mental status at the time of the execution of the instrument and would not have followed through with the execution process if she had any concerns at that time.

A few days after the execution of the Warranty Deed, and on another outing with her daughter Irma Lemus, Elvira Garibay Aguilar signed and executed a Power of

Attorney at the Law Offices of West & West. Attorney North West indicated in his testimony that there were no concerns about her mental capacity to understand the nature of her execution of the Medical Power of Attorney and the Durable Power of Attorney on January 16, 2009. In addition, when asked by plaintiffs' attorney about the condition of the signature on the Warranty Deed, Attorney North West indicated that the signature was something he saw all the time in his practice with elderly clients.

Elvira Garibay Aguilar's concerns about Johnny Montoya's interest in the property at 106 Cameo in fact came to fruition. He attempted to claim an ownership interest in 106 Cameo, by filing a Mechanic's and Materialman's Lien in 1991 with the Bexar County Clerk records. Johnny Montoya Garza's, second attempt to claim ownership in 106 Cameo San Antonio, Texas 78214, occurred when he intervened in a lawsuit wherein he claimed to be the spouse of Elvira Garibay Aguilar. That lawsuit was filed by Elvira Garibay Aguilar's son John David Aguilar and the grandchildren against Irma Lemus and Manuel Lemus, Jr. The lawsuit sought to set aside the warranty deed dated January 7, 2009, to declare that the March 11, 2005 was a holographic will, and for Johnny Montoya Garza to collect the money owed to him on the Mechanic's and Materialman's Lien of 1991. The Plaintiffs' and Intervenor nonsuited this case without prejudice after Judge Michael Peden granted the summary judgment of Irma Lemus and Manuel Lemus, Jr.

Johnny Montoya Garza's, third attempt to claim ownership interest in 106 Cameo San Antonio, Texas 78214 was when he filed an affidavit of a Mechanic's and Materialman's Lien pursuant to the Texas Constitution Article 16, Section 37 on May 19,

2010 as a claim for a lien in the amount of $83,799 against 106 Cameo San Antonio, Texas 78214.

Johnny Montoya Garza's, fourth attempt to claim ownership interest in 106 Cameo San Antonio, Texas 78214 was in 2012 when the current lawsuit was filed wherein he claims one-half ownership interest in 106 Cameo San Antonio, Texas 78214 based on his own handwritten letter of March 11, 2005, and wherein he claims Elvira Garibay Aguilar gave him half of said property and the other half to the grandchildren. In addition, in the 2012 lawsuit, Johnny Montoya Garza also asserts a claim for money owed to him for his labor, payments on bank loan, materials purchased and the increase in value pursuant to the improvements made on 106 Cameo San Antonio, Texas 78214 in the amount of $83,799. His testimony was that once the grandchildren came to reside with Ms. Aguilar, he assisted in building a second story in which he claimed an ownership interest. His specific statement indicated that Elvira Aguilar intended to give him the second story of the house on Cameo.

The house on Cameo had not been occupied for several years and the house had been abandoned to deteriorate over the passage of time. No one maintained the house except for the Irma and Manuel Lemus. After the signing and execution of the Warranty Deed of January 7, 2009 and the signing of the Power of Attorney thereafter, Irma and Manuel Lemus diligently changed the locks, and began a significant renovation and improvement project to fix the deteriorated condition of 106 Cameo San Antonio, Texas 78214. The Lemus' continued to maintain the home on a regular basis and provided insurance of the real property to the present time. More importantly, the Lemus' paid the

past due property taxes for the years 2006, 2007, 2008, 2009 and have kept paying the property taxes to the present time.

## D.

## ISSUES ON APPEAL

1. Did the trial court "manifestly disregarded Texas law" and make a "gross error" by applying the wrong legal standards and incorrectly weigh the evidence by not denying the declaratory judgment that the March 11, 2005 handwritten letter was barred by § 16.004 of the TEX. CIV. PRAC. & REM. CODE which required a person bring suit on the following actions not later than four years after the day the cause of action accrues for specific performance of a contract for the conveyance of real property and did the trial court erroneously allow the appellees cause of actions to move forward even though the cause of action of appellees was barred by the statute of limitations pursuant to Tex. Civ. Prac. & Rem. Code § 16.004 (a) (4)? See Tex. R. App. P. 59.1

2. Did the trial court err and abuse its discretion in holding that, contrary to Tex. Prop. Code § 5.002 and Tex. Prop. Code § 5.003 (a ) and (b), the document dated March 11, 2005 purported to be handwritten by Johnny Montoya Garza and allegedly signed by Elvira Aguilar, but not "subscribed" to be a valid "conveyance" or "gift deed" to actually "convey" to Appellees John Rene Aguilar, Johnny B. Wells, and Laura Ashley Wells a shared ownership interest in the property described as Lot 4, Block 2, NCB 12291, Campo Gardens Addition, in the City of San Antonio, Bexar County Texas, according to plat thereof recorded in Vol. 3525, Page 192, Deed and Plat Records of Bexar County, Texas when the evidence presented was legally and factually insufficient to support this finding?

3. Did the trial court err and abuse its discretion in transferring the burden of proof on an issue to Appellants, IRMA LEMUS and MANUEL LEMUS, JR. The Appellants are attacking the legal sufficiency of an adverse finding of an issue on which Appellants did not have the burden of proof, Appellants shall demonstrate that there is "no evidence" to support the adverse finding. (Croucher v. Croucher 660 S.W.2d 55, 58 (Tex. 1983)?

4. Did the trial court err and abuse its discretion in awarding attorney's fees and costs, pursuant to Dallas Cent. Appraisal Dist. V. Seven Inv. Co. 833 S.W.2d 75, 77 (Tex. 1997) which argues that the "recovery of attorney's fees must be authorized by statute or contract"?

5.  Did the trial court err and abuse its discretion in holding that, pursuant to Tex. Prop. Code § 5.041 and Tex. Prop. Code 5.021 that the letter prepared by Johnny Montoya dated March 11, 2005, presented by Appellees was characterized by the trial court as an "inter vivos conveyance" and that the trial court determined that based on Tex. Prop. Code § 13.000 (b), this unrecorded instrument is fully binding on a party and the party's heirs, and on a subsequent purchaser who does not pay valuable consideration or who has notice of the instrument?

6.  Did the trial court err and abuse its discretion in holding, contrary to Tex. Prop. Code § 5.003 (a) and (b), Tex. Prop. Code. § 13.002 Tex. Prop. Code § 5.021, and Tex. Prop. Code § 5.023, that the Warranty Deed presented by Appellants as "void" when the evidence presented by testimony of Attorney North West and the actual Notary Public, State of Texas, Kimberly L. Wynns who witnessed the grantor's capacity at the "time of its execution" exhibited the "mental capacity" to "act with an understanding in a reasonable manner the nature and effect of her signing pursuant to Tex. Prop. Code § 13.001 (b) on January 7, 2009?

7.  Did the trial court abuse its discretion by not dismissing the specific claim by appellants to declare by declaratory judgment § 37.009 that the March 11, 2005 handwritten document because it was barred by res judicata because the issue of whether it was a "GIFT DEED" could have been raised by the prior lawsuit of appellees as an alternate claim and it was not pursuant to the precedent established in the case of *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d. 78, 88-87 (Tex. 2008) that when a second lawsuit based on a claim that could have been raised in the appellees first lawsuit against the appellants?

8.  Did the trial court abuse its discretion when it denied the reimbursement claim of appellants and in denying the appellants' claim for attorney's fees and costs for the defense of the trespass to try title claim and the request for declaratory judgment?

## I.     POINT OF ERROR 1

Did the trial court "manifestly disregarded Texas law" and make a "gross error" by applying the wrong legal standards and incorrectly weigh the evidence by not denying the declaratory judgment that the March 11, 2005 handwritten letter is barred by § 16.004 of the Texas Civil Practices and Remedies Code which requires a person must bring suit on the following actions not later than four years after the day the cause of action accrues for specific performance of a contract for the conveyance of real property and did the trial court erroneously allow the appellees cause of actions to move forward even though the cause of action of appellees was barred by the statute of limitations pursuant to Tex. Civ. Prac. & Rem. Code § 16.004 (a) (4)?

Appellants argue that the trial court abused its discretion when it declared judgment that the March 11, 2005 handwritten letter is a Gift Deed when the claim of Johnny Rene Aguilar, Laura Ashley Wells, Johnny B. Wells and Johnny Montoya Garza was not filed within the time allotted and therefore barred by the 4 year statute of limitations. Appellants filed an affirmative defense of Statute of Limitation in the cause claiming that the parties failed to file their case within the required time frame. Their suit for declaratory judgment to validate the March 11, 2005 document should have been filed on or before March 11, 2009.

Furthermore, if you apply Chapter § 37.004 cited as the Uniform Declaratory Judgments Act, the purpose is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations of a person interested under a deed, will, written contract, or other writing constituting a contract that are affected by a statute, where there is a question of construction or validity arising under the instrument and obtain a declaration by a trial court. Under such section, the statute of limitations is four years. Appellants also argue that pursuant to § 37.008 of the Texas Civil Practice and Remedies Code the trial court should have refused to render or enter a declaratory judgment or decree because it did not terminate the uncertainty or controversy giving rise to the proceeding.

Pursuant to Texas Property Code § 5.021, a conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing. According to the testimony of Johnny Montoya Garza on the record, Elvira Garibay Aguilar did not deliver the "writing" to Johnny Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells. Johnny Montoya Garza testified that the envelope containing the "writing" was placed in an envelope in a drawer where other papers were kept. Johnny Montoya Garza testified that he

assumed that Elvira Garibay Aguilar would take the "will" to an attorney's office to get "notarized" or "reprinted" to make it "legal." A conveyance by deed requires delivery. (*Noell v. Crow-Billingsley Air Park Lts. P'ship*, 233 S.W.3d 408, 415 (Tex. App.-Dallas 2007, pet. denied). According to the *Noell* case, "delivery of a deed" requires separate and distinct "elements" or actions by the grantor, only if the person that is supposed to be the grantor can be "ascertained." In applying the *Noell* case, to the facts at hand, the grantor, Elvira Garibay Aguilar and/or Johnny Montoya Garza, must place the deed in the control of the "grantees" with the intention that the deed becomes operative as a conveyance." However, if the intention for the March 11, 2005 letter was to be a "will", it was for the grandchildren to inherit the house at the time of the drafter's death. It does not therefore make it a valid "gift deed." Thus, there was no intention of Elvira Garibay Aguilar for the March 11, 2005 handwritten letter to be effective as a "valid conveyance" when Johnny Montoya Garza testified that he was aware that additional steps were needed in order to make it "legal." His testimony was that he and Ms. Aguilar intended to take the document to an attorney's office and as such they knew additional steps were needed to manifest the intention set forth in the "Will". In addition, according to the testimony of Johnny Montoya Garza he and Elvira Garibay Aguilar were present that day and there are no other "disinterested witnesses" to witness the document, or verify the instrument.

Also, very importantly, Johnny Montoya Garza testified that he gave the March 11, 2005 handwritten letter to the son of Elvira Garibay Aguilar, John David Aguilar who would assist his mother in moving to Nanette Aguilar's home in the year 2006, and who assisted his mother in the registration in the Normandy Terrace Nursing home on November 15, 2008. John David Aguilar is the same son who acquired a Durable Power of Attorney signed by Elvira Garibay Aguilar on

November 15, 2008, and who two months later claimed that Elvira Garibay Aguilar lacked the mental capacity to sign a Warranty Deed on January 7, 2009.

When the appellees filed suit to set aside the Warranty Deed signed by Elvira Garibay Aguilar on January 7, 2009, the trial court erroneously declared that the Warranty Deed of January 7, 2009 was void for want of mental capacity. However, for argument's sake the trial court should have declared the Warranty Deed "voidable" not "void". The Texas Supreme Court declared that the statute of limitations does not apply to deeds that are declared "void" and the statute of limitations does apply when the deeds are "declared merely voidable". (*Slaughter v. Qualls*, 162 S.W. 2d 671, (Tex. 1942). According to the Slaughter case, "that which is voidable operates to accomplish the thing sought to be accomplished until the [alleged] fatal vice in the transaction has been judicially ascertained and declared." (*Slaughter v. Qualls*, 162 S.W.2d 671, (Tex. 1942). Thus, by the trial court declaring the January 7, 2009 Warranty Deed "void" instead of "voidable", which, if true, would have been the proper determination, then Johnny Montoya Garza and the three grandchildren were not precluded by the statute of limitations that does not apply to "void" deeds. Furthermore, Johnny Montoya Garza would have had to file suit based on the March 11, 2005 handwritten document by March 10, 2009, prior to the expiration of the 4 year statute of limitations. However, since the trial court erroneously declared the January 7, 2009 void for want of mental capacity, the appellees possible property interest and trespass to try title claims allegedly created by the March 1, 2005 handwritten letter would not have been barred by the 4 year statute of limitations. (*Garcia v. Garza*, 311 S.W. 3d 28 (Tex. App. 2010). In comparing the facts from the *Garcia* quoting the *Slaughter* case, the appellants attempted to set aside a deed that was recorded in 1975, and the appellees argued that the *Garcia* appellants were barred by the 4 year statute of limitations because the mineral deed was voidable not void when

"the equity powers of the court must first be invoked to cancel the deed before a suit can be maintained at law to recover the land within the 4 year statute of limitations. (*Garcia v. Garza*, 311 S.W. 3d. 28 (Tex. App. 2010). In distinguishing the two cases, in the *Slaughter* case the trustee deed was void and in the *Garcia* case the mineral deed was voidable, thus, the Garcia appellants claims trespass to try title and quiet title were barred by the 4 year statute of limitations as is the trespass to try title claims of the appellees Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells. Their claim should have been barred by the 4 year statute of limitations. (*Garcia v. Garza*, 311 S.W.3d. 28 (Tex. App. 2010). The statute of limitations is tolled on the grandchildren during any years their age was 17 or younger, and starts to accrue on their 18th birthday.

Specifically, a cause of action accrues, or the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Conway v. Durell*, 13-10-00614-CV, WL 3043100, (Tex. App.—[13th Dist.] Corpus Christ, 2012); (citing *Johnson & Higgins of Tex., Inc. v. Kenne Co. Energy, Inc.*, 962 S.W.2d. 507, 514 (Tex. 1990). In the *Conway* case, the appellant is a woman who was involved in a same-sex relationship with *Durell*, who actually signed a deed in the year 2003, which was placed in a box, and was never recorded. Conway stated that Durell would "dangle the deed in her face" when Conway threatened to leave her. Conway was aware that the deed was not filed and remained with Durell for a few more years, but left her in 2008. Conway then filed suit against Durrell for breach of fiduciary duty and fraudulent concealment in 2010. The trial court denied the claims of Conway stating that her claims were barred by the 4 year statute of limitations and Conway appealed. (TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (a) (4) (5) (2002)). Conway should have filed suit within 4 years from the date the warranty deed was signed by Durrell on November 5, 2003, which is

the date the statute of limitations began to run. In applying the law to the case at hand, Johnny Montoya Garza should have filed suit within the 4 year statute of limitations beginning March 11, 2005, and because he didn't any of his claims are barred by the 4 year statute of limitation. The court of appeals affirmed the trial court's decision to grant Durrell's summary judgment motion dismissing Conway's claims for breach of fiduciary duty and fraudulent concealment. Furthermore, the grandchildren's claims are barred by the 4 year statute of limitations, which begin to run at the age of their majority. (*Conway v. Durell*, No. 13-10-00614-CV, WL 3043100, (Tex. App.—[13 Dist.] Corpus Christi, 2012); (citing *Vasquez v. Vazquez*, 973 S.W.2d 330, 331 (Tex. App.—Corpus Christi, 1998, pet. denied)). Thus, when Johnny Montoya Garza testified that Elvira Garibay Aguilar put the March 11, 2005 document in a drawer then, Elvira Garibay Aguilar did not intend to convey the property for purposes of "delivery" so the accrual date for delivery would be the date of execution, which March 11, 2005.

John David Aguilar, son of Elvira Garibay Aguilar, Johnny Montoya Garza who claims was "part owner of the second story" of 106 Cameo, nor the grandchildren John Rene Aguilar, Laura Ashley Wells, or Johnny B. Wells pay or have paid any of the property taxes. Neither did any of these parties diligently inquire about the property taxes owed on 106 Cameo San Antonio, Texas 78214. In 2006, the grandchildren John Rene Aguilar and Laura Ashley Wells had reached the age of majority and according to the testimony of Laura Ashley Wells she received a lump-sum of approximately $31,000 settlement in 2006. In addition, the grandchildren also had been disbursed funds from their trust funds. Therefore, they had resources to move back to 106 Cameo San Antonio, Texas 78214 in 2006, 2007, and in 2008, but they voluntarily resided in apartments, friends and with other family members. Specifically, all three grandchildren had the financial means to pay the property taxes if in fact they considered themselves 1/3 owners of the 106 Cameo

San Antonio, Texas 78214. However, it wasn't until the lawsuit against Irma Lemus and her husband Manuel Lemus, Jr. in 2009 that was nonsuited, that the parties attempted to validate the instrument as a "holographic will".

According to Texas Property Code § 71.005, an individual exercises a lawful act of ownership in property by, personally or through an agent, paying taxes on the property, which neither John Rene Aguilar, Laura Ashley Wells, Johnny B. Wells, Johnny Montoya Garza, or John David Aguilar exercised in 2006, 2007, or 2008. At no time have the parties ever paid property taxes. In fact, as stated, the Lemus' have consistently paid the property taxes on said property to the present time.

To constitute an inter vivos gift, there must not only be a donative intention, but also a complete stripping of the donor of all dominion or control over the real property. (*Peterson v. Weiner*, 71 S.W.2d 544, 546 (Tex. Civ. App. San Antonio, 1934, writ ref'd). When the March 11, 2005 handwritten letter was alleged to have been signed by Elvira Garibay Aguilar, she was not "stripped of all the dominion or control over 106 Cameo San Antonio, Texas 78214, thus the March 11, 2005 handwritten letter cannot be considered a valid inter vivos "gift deed" transferring real property to John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells. Consequently, the evidence on the record could not sustain a finding that the trial court made that the March 11, 2005 handwritten letter was a "gift deed". In addition, John Rene Aguilar, Laura Ashley Wells, Johnny B. Wells and Johnny Montoya Garza, the parties claiming the "gift deed" did not prove "by clear and convincing evidence" that the March 11, 2005 handwritten document was a valid gift according to all their testimony. They all testified that Elvira Garibay Aguilar did not move to her daughter Nanette's residence until 2006, see (*Dorman v. Arnold*, 932 S.W.2d 225, 227 (Tex. App. Texarkana, 1996, n.w.h.). Furthermore, because the March 11, 2005 handwritten

document is not a "completed gift" because Elvira Garibay Aguilar did not "relinquish title to or control of" 106 Cameo San Antonio, Texas 78214. According to *Theriot v. Smith*, "[o]ne who retains benefits under a transaction cannot avoid its obligations, and is estopped to take a position inconsistent therewith.")(*Theriot v. Smith*, 263 S.W.2d 181, 183 (Tex. Civ. App.—Waco, writ dism'd). Because John Rene Aguilar, Laura Ashley Wells, Johnny B. Wells did not pay the property taxes for 106 Cameo San Antonio, Texas 78214 in 2005, 2006, 2007, 2008 and 2009, they are "estopped" from the "benefit" of "ownership" of 106 Cameo San Antonio, Texas 78214. (*Turcotte v. Trevino*, 499 S.W.2d 705, 712 (Tex. Civ. App.—Corpus Christi 1973, n.r.e.).

The appellee Johnny Montoya Garza is granted a life estate in 106 Cameo San Antonio, Texas 78214 erroneously by the trial court because in applying the *Turcotte* case, Johnny Montoya Garza lacks standing to assert claim against the "will" or March 11, 2005 handwritten document, after he had filed a Constitutional Mechanic's and Materialman's lien on the same property, which defeats the intentions of the will and is inequitable, unjust and against public policy. In the *Turcotte* case, Patrick *Turcotte* and Robert *Turcotte* were not considered "interested persons" for the purpose of contesting a will because they had claimed "minute interests through the assignments purchased to defeat the will" which "would breed litigation and deprive the real parties at interest of their right to compromise and settle their controversies." *Id.* The trial court denied appellee Johnny Montoya Garza's claim that the March 11, 2005 handwritten document was a parol gift of an undivided one-half interest in 106 Cameo San Antonio, Texas 78214. The appellants agree with this finding, however, the appellants argue that the March 11, 2005 failed as a valid conveyance of real property to all appellees. The trial court in the Corrected Judgment held that the March 11, 2005 handwritten document is a present transfer to the grandchildren subject to a life estate of Elvira Garibay Aguilar and Johnny Montoya Garza which is clearly

erroneous, and not supported by the evidence. There is no language in the document that in any way grants a life estate to Johnny Montoya Garza. Most importantly Appellee Johnny Montoya Garza never pled for such.

## II.   POINT OF ERROR 2

**Did the trial court err and abuse its discretion in holding that contrary to Tex. Prop. Code § 5.002 and Tex. Prop. Code § 5.003 (a) and (b), the document dated March 11, 2005 purported to be handwritten by Johnny Montoya Garza and allegedly signed by Elvira Aguilar, but not "subscribed" to be a valid "conveyance" or "gift deed" to actually "convey" to Appellees John Rene Aguilar, Johnny B. Wells, and Laura Ashley Wells a shared ownership interest in the property described as Lot 4, Block 2, NCB 12291, Campo Gardens Addition, in the City of San Antonio, Bexar County Texas, according to plat thereof recorded in Vol. 3525, Page 192, Deed and Plat Records of Bexar County, Texas when the evidence presented was legally and factually insufficient to support this finding?**

Appellants argue that the reviewing court could discern the actual subjective intent of the parties in the document titled "WILL" dated March 11, 2005, handwritten by Johnny Montoya Garza and allegedly signed by Elvira Garibay Aguilar. In *Luckel v. White*, the reviewing court stated that "it is not the intent that governs the interpretation of the deed, but the intent of the parties as expressed in the deed. (*Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *See also*, *J.M. Davidson, Inc. V. Webster*, 128 S.W. 3d. 223, 229 (Tex. 2003). The trial court erred in finding that the handwritten document that Johnny Montoya Garza testified to writing himself expressed the intention of Elvira Garibay Aguilar. The handwritten document contains inconsistencies and places conditions on other family members and as a whole is extremely ambiguous. In order to review the "operative deed language" in the March 11, 2005 handwritten document, the actual intent of Johnny Montoya Garza is very clear, when he states that "he is part owner on 2nd story of house". However the true owner of the house, Elvira Garibay Aguilar's actual intent is not clear or unambiguous. The following is the document of March 11, 2005, which by declaratory judgment the trial court found to be a Gift Deed:

page 1

Will from Johnny Montoya Garza and Elvira G. Aguilar:

We the above people agree that
the house at 106 Cameo San Antonio
Texas 78214 belongs to Elvira G.
Aguilar And Johnny Montoya Garza
part owner on 2d story of house
was built because of the children
that were awarded to Ms Elvira G. Aguilar
at the time of her daughter's death the state awarded
the children to Ms Elvira G. Aguilar
then we decided to add onto the
house to make rooms for the children
there for we agree that the house be evenly owned
by John Rene Aguilar Laura Ashley
Wells And Johnny B. Wells. Nothing
will be done to the house with-
out the authorization of John
Rene Aguilar Johnny B. Wells And
Laura Ashley Wells. In case of a
disagreement on the Aguilar part
And the children Listed above
have the final say in what is
to be done to the house at

page 2

106 Cameo San Antonio Texas 78214
John Rene must keep me
Informed of all dicissions so
that I Johnny Montoya Garza
Can be as helpful to the children
so that there is no harsh
discissions made. I Johnny
Montoya Garza am expecting
that all family members
except this will that Elvira G.
Aguilar And Johnny Montoya Garza
have decided to award the house
At 106 Cameo to the children
Listed Previously I Johnny Montoya
Garza Am Positivly sure that
There will be no disagreement

between the families.  So I
hope tha John David Aguilar
And Nannette Aguilar And other
Family members    Respect the
wishes of Elvira G. Aguilar &
Johnny Montoya Garza please
have all family members sign
this agreement will.  May God be
with you All in these hard times
please agree to your mom And
over

page 3

my discussion.   We had discussed
this between us when the
children were put in our
hands

The trial court cited the "four corners rule" to attorney North West during his testimony as the authority to establish that the March 11, 2005 was a valid conveyance of real property. (*Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991).  The attorney North West in his testimony clearly stated that in reading the document, and within its "four corners", one of the reasons the March 11, 2005 document could not be a valid conveyance of real property was because it was completely ambiguous.  The fact that the document was titled "Will" demonstrated that intent was that it was perhaps to take effect as some time in the future.  Most importantly, the fact that it was referred to as an "agreement" and just because it fails as a will, does not therefore make it a deed.

Attorney North West testified further that the March 11, 2005 handwritten document was "nothing".  In the *Graham* case, an exception to the "four corners rule" is established that extrinsic documents outside the four corners of the document can be used to interpret whether the document is ambiguous or unambiguous. *Graham v. Prochaska*, No. 04-12-00755-CV (Tex. App.--San

Antonio, 2013); (citing *Cockrell v. Tex. Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672 (1956).

Appellees argue that the March 11, 2005 handwritten document, created a life estate for Elvira

Garibay Aguilar and Johnny Montoya Garza and the that the grandchildren, John Rene Aguilar,

Laura Ashley Wells, and Johnny B. Wells would own 106 Cameo San Antonio, Texas 78214

after their respective deaths. In addition, in the March 11, 2005, Johnny Montoya Garza, also

writes in the handwritten document that he *"hopes tha(t) John David Aguilar And Nannette

Aguilar And Other family members Respect the wishes of Elvira G. Aguilar and Johnny Montoya

Garza Please have all family members sign this agreement will. "* Thus, the actual intent of this

handwritten letter was for Johnny Montoya Garza to grant himself some type of property interest

in 106 Cameo San Antonio, Texas 78214. The language in the handwritten letter of March 11,

2005 is so ambiguous, as well as the fact that the author references the handwritten letter itself as

a "Will" while simultaneously referring to the language within the body of the document as an

"agreement", makes the document ineffective as a transfer or conveyance of real property.

*(Houchins v. Devon Energy Production Co.,*(Tex. App. –Houston [1st Dist.] Oct. 15, 2009.)

Because the March 11, 2005 handwritten document is ambiguous, a trial court may go beyond

the four corners of the document to make a determination as to what the intention of the parties

was in the specific document. The court can review other extrinsic documents to assist. *(Cockrell

v. Tex. Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672 (1956). In this case the fact that Elvira

Garibay Aguilar executed the January 7, 2009 Warranty Deed is further proof that it was not her

intention that the handwritten document have any legal effect. In fact according the Johnny

Montoya Garza's testimony, additional steps were needed to make the handwritten document

"legal". The trial court disregarded these facts, and the trial court judge refused any explanation

that attorney North West would articulate if it did not conform to validating the March 11, 2005 handwritten document as a deed.

In light of the these facts, the appellants argue that the evidence is insufficient to support the finding that the March 11, 2005 handwritten letter operates as a valid 'GIFT DEED' and asks the appellate court to overturn or reverse this part of the trial court's judgment.(*Dace v. Dace* (Tex. App. –Houston[1st Dist.] July 31, 2008. Although § 5.041 of the Texas Property Code states that a person may make an inter vivos conveyance of an estate of freehold, the March 11, 2005 document, is void on its face because the grantee was insufficiently described. (*Lott v. Dashiell*, 233 S.W. 1103 (Tex. Civ. App. –San Antonio, 1921.) The handwritten document refers to Johnny Montoya Garza as a half owner and the grandchildren owning the other half only if John David Aguilar and Nanette Aguilar "sign this agreement." The handwritten document also fails to create a life estate. In addition, the handwritten document lacks the specific words of "grant" "sell" and/or "convey". To add more confusion, the handwritten document also lists John David Aguilar and Nanette Aguilar. According to Texas Property Code § 11.003, a document signed after 1981, must include the grantees' mailing address. According to the record, two of the children were not residing at 106 Cameo San Antonio, Texas 78214. In addition, at the time the letter was written the children were minors and lacked the capacity to accept the conveyance because their disabilities had not been removed.

In addition, the record does not reflect "delivery" of the deed, which is also necessary element for a deed to be effective. The document is so unclear and ambiguous that it is not possible to determine whether Elvira Garibay Aguilar had "donative intent" and whether such was independent of any undue influence of Johnny Montoya Garza, the author of the document. (*Pace v. McFwen*, 574 S.W.2d. 792 (Tex. Civ. App.—El Paso 1978, writ ref. n.r.e.) Specifically,

the writing was not a valid gift because from the March 11, 2005 handwritten document, a grantor(s) and grantee(s) cannot be ascertained. Too many family members are mentioned throughout the document with conditions precedent required, as well as the indication that the other family members must also sign and agree.

Generally, a conveyance of real property must be in writing. See Tex. Bus. & Com. Code 26.01; Tex. Prop. Code 5.021. However, a gift of realty can be made in two ways: either by deed or by parol gift. *Troxel v. Bishop, 201 S.W.3d 290, 297 (Tex. App.C Dallas 2006, no pet.).* To relieve a parol gift of real estate from the requirement of a writing, one must show three elements: (1) a fift in praesenti, this is, a present gift; (2) possession under the gift by the donee with the donor's consent; and (3) permanent and valuable improvements, made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift. ( *Dauson v. Tumlinson,* 150 Tex. 451, 242 S.W.2d 174, 178 (Tex. App. Corpus Christi 1982, no writ*).* The grandchildren did not testify to having possession of such property or even of knowing about the document at issues, nor was there any testimony of them making any type of improvements to 106 Cameo San Antonio, Texas 78214 in 2005, 2006, 2007, 2008, or 2009. In fact, they did not even care to inquire about the taxes and upkeep of the property.

To be a present gift, the donor must, at the time he made it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Thompson v. Dart, 746 S.W.2d 821, 825 (Tex. App.—San Antonio, 1988, no writ).* If Elvira Garibay Aguilar had truly participated in the March 11, 2005 handwritten document, the only witness being Johnny Montoya Garza, according to his testimony, it was not her intention for her to divest ownership in the property to him or the grandchildren on March 11,

2005 because she not did deliver the March 11, 2005 document to the grandchildren, she placed it in a drawer and continued to reside in the home. *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex. App.—San Antonio, 1988, no writ). The three elements which constitute a gift are (1) donative intent, (2) delivery of the property, and (3) acceptance of the property. *Id.* All dominion and control over the property must be released by the owner. *Id.* The party claiming a parol gift has the burden of establishing these elements. *Id.* Furthermore, the March 11, 2005 handwritten document, allegedly signed by Elvira Garibay Aguilar was not executed and notarized, and most importantly, it was not even written by her, according to the testimony of Johnny Montoya Garza he said, "I wrote the whole thing." The evidence does not establish a gift by deed or by oral gift.

In addition, the Texas Supreme Court in *Republic National Bank of Dallas v. Stetson*, 390 S.W.2d 257 (Tex. 1965) stated that the general rule that the description in a written conveyance must furnish within itself or by reference to some other existing writing, the means or data by which the particular land conveyed can be identified. In holding that the alleged parol gift of land violated the statute of frauds, the Texas Supreme Court stated that its policy and reasoning against parol conveyances of land was to avoid uncertain and unsettled land titles resting in parole, fraud and perjury.

### III.POINT OF ERROR 3:

**Did the trial court err and abuse its discretion in transferring the burden of proof on an issue to Appellants, IRMA LEMUS and MANUEL LEMUS, JR. The Appellants are attacking the legal sufficiency of an adverse finding of an issue on which Appellants did not have the burden of proof, Appellants shall demonstrate that there is "no evidence" to support the adverse finding. (Croucher v. Croucher 660 S.W.2d 55, 58 (Tex. 1983)?**

The Appellants, IRMA LEMUS and MANUEL LEMUS, JR. are attacking the legal sufficiency of an adverse finding of an issue on which Appellants did not have the burden of proof and Appellants argue that there is "no evidence" to support the adverse finding. (*Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Appellants argue that the reviewing court must consider only the evidence and inferences tending to support the trial court's finding disregarding all contrary evidence and inferences. Under Texas law, the party claiming that a gift was made must prove by clear and convincing evidence. (*Dorman v. Arnold*, 932 S.W.2d. 225 (Tex. App. – Texarkana 1996). The trial court abused its discretion by incorrectly shifting the burden of proof. The trial court accepted that the March 11, 2005 handwritten letter was a valid gift deed and forced the Appellants to disprove it. The trial court abused its discretion because the evidence supporting the finding is so weak that it must be set aside and a new trial ordered. (*Garza v. Alviar* 395 S. W.2d. 821 Tex. Sup. 1965).

## IV.POINT OF ERROR 4

**Did the trial court err and abuse its discretion in awarding attorney's fees and costs, pursuant to Dallas Cent. Appraisal Dist. V. Seven Inv. Co. 833 S.W.2d 75, 77 (Tex. 1997) which argues that the "recover of attorney's fees must be authorized by statute or contract."**

Pursuant to §37.009 of the TEX. CIV. PRAC. & REM. CODE, the Appellants assert that there is no basis for a declaratory relief when a party is seeking in the same action a different enforceable remedy, and a judicial declaration would add nothing to what would be implicit or expressed in a final judgment for the enforceable remedy. (*Strayhorn v. Raytheon Essypleus* 101 S.W.3d 558, 572 (Tex. App. Austin 2003 pet. denied). The actual granting or denying of attorney's fees is within the trial court judge's discretion. (*Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). However, the appellants argue that appellees cannot recover attorney's fees because an award of attorney's by

a trial court "must be authorized by statute or contract". The issue of whether a trial court can award attorney's fees under a statute is a question of law that a reviewing court will review "de novo" under the abuse of discretion standard. *Mungia v. VIA Metropolitan Transit*, No. 04-13-00549-CV (Tex. App.—San Antonio, April 9, 2014, no pet.) (memo. Op.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); (citing Fitzgerald v. Schroeder Ventures II, LLC, 345 S.W.3d 624, 627 (Tex. App.-San Antonio 2011, no pet.). In the *Mungia* case, Appellate *Mungia* argued that the trial court abused its discretion in awarding VIA attorney's fees under the declaratory judgment when VIA had filed a bill of review and a request for declaratory judgment to set aside the default judgment against them due to lack of service. Appellate *Mungia* further argued that the declaratory judgment afforded VIA no greater relief than the bill of review because both cause of actions had the same purpose of setting aside the default judgment. Thus, appellate *Mungia* argued that VIA purpose in seeking declaratory judgment was to obtain attorney's fees. In the case at hand, the appellees lawsuit in regard to the property 106 Cameo San Antonio, Texas 78214 included a trespass to try title claim and a declaratory judgment. A trespass to try title claim is the exclusive cause of action to remedy competing claims to a property by parties. Appellants' argue that the only reason that the appellees lawsuit included a request for declaratory judgment was specifically to seek attorney's fees. Appellants assert that the award of attorney's fees to appellees is improper and should be reversed. In a similar case *MBM Fin. Corp.*, the appellate court found that the award of attorney's fees was improper when the "plaintiff asserted claims for breach of contract, fraud, and declaratory relief" as in the case at hand, the appellants also sought relief through the trespass to try title and declaratory relief which in essence the trespass to try title cause of action would have been sufficient to dispose of the competing claims to 106 Cameo San Antonio, Texas 78214, thus the request for declaratory relief was an

"impermissible vehicle for an award of attorney's fees."(*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). The appellate court in the MBM Fin. Corp. case held that the trial court erred in awarding attorney's fees to plaintiffs because the request for declaratory relief was "merely tacked onto a standard suit for breach of contract" which is the same angle that the grandchildren appellees in the instant case "tacked onto" their trespass to try title lawsuit as an undeserving attempt to avoid having to pay their own attorney's fees. (*Mungia v. VIA Metropolitan. Trans.*, No. 04-13-00549-CV, (Tex. App.—San Antonio April 9, 2014 pet. denied);(citing *Etan Indus. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011). Thus, the trial court erroneously awarded appellees attorney's fees because the declaratory relief sought was duplicative claim and therefore improper.

In addition, Johnny Montoya Garza, specifically, asserted in his pleadings that he owned an undivided ½ of 106 Cameo San Antonio, Texas 78214, with the grandchildren owning the other half. However, plaintiffs strive to recover attorney's fees involving "multiple claims" and particularly, in the case at hand, multiple plaintiffs with competing and/or conflicting interests as with the plaintiff grandchildren, Johnny Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells with the other plaintiff Johnny Montoya Garza the purported "partner" of Elvira Garibay Aguilar, who never saw her after the year 2006, and by his own testimony never visited her at the nursing home.

Through the handwritten will of March 5, 2011 allegedly signed by Elvira Garibay Aguilar and was allegedly her *shared* intent with Johnny Montoya Garza, who was not her husband and/or agent, but her "partner", the trial court erred in declaring the handwritten will of March 5, 2011 a valid gift deed and therefore improperly awarded Appellee attorney's fees and costs because there was "no basis" for declaratory relief. The declaratory action by appellees did not dispose of the

entire controversy and the duplicative issues of the appellees lawsuit remain unresolved. (*Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 455 (Tex. App.-Dallas 2010, pet. denied) Thus, since the plaintiffs should not have succeeded in their declaratory judgment claim and all other claims, whether competing or conflicting, none of the plaintiffs are entitled to attorney's fees and/or costs. (*Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). According to Texas Civil Practice and Remedies Code § 37.009, the award of attorney's fees and costs must be "reasonable", "necessary", "equitable" and "just." Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells abandoned 106 Cameo San Antonio, Texas 78214, in the years of 2006, 2007, 2008 by not permanently residing in 106 Cameo San Antonio, Texas 78214, failing to maintain the property in a habitable and livable condition, and failing to diligently pay the property taxes. Ultimately they were not aware of March 11, 2005 handwritten letter because of the failure of delivery of the March 11, 2005 letter to the grandchildren.

Or on the other hand, the grandchildren did not act as true owners of 106 Cameo San Antonio, Texas 78214 because they did not accept the responsibility of ownership of 106 Cameo San Antonio, Texas 78214, thus the grandchildren did not exercise a further act of dominion or control over 106 Cameo San Antonio, Texas 78214, which would have been required to be a valid inter vivos gift. (Harmon v. Schmitz, 39 S.W.2d 587, 589 (Tex.Civ.App. 1931); (Dorman v. Arnold, 932 S.W.2d 225, 227 (Tex.App.1996). The elements necessary to be a valid inter vivos gift were not met according to the testimony of the appellees and the evidence on the record. The appellees were unable to prove intent to make a gift by Elvira Garibay Aguilar, because she allegedly placed the document in a desk according to Johnny Montoya Garza instead of delivering to appellees, and the fact that she did not intend to make a gift because she did not move out of the 106 Cameo San Antonio, Texas 78214 until 2006, and, more importantly, the March 11, 2005

handwritten document or the property itself was not accepted by the appellees. Thus, the trial court erred in awarding attorney's fees and costs because of the fact that if Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells believed that they were the legitimate title owners to 106 Cameo San Antonio, Texas 78214, why did they not act in a way that a true owner of real property would act. (*Benavidez v. Laredo National Bank*, 91 S.W.2d 372, 374 (Tex.Civ.App. –Eastland 1936 n.w.h.). The trial court erred in awarding attorney's fees and costs because of the lack due diligence of Johnny Montoya Garza and the grandchildren John Rene Aguilar, Laura Ashley Wells and Johnny B. Wells, whom according to their testimony had full access to their trust accounts at least by the year 2007 because the award of attorney's fees and costs are unjust and would not be equitable, reasonable and/or necessary.(*Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, (Tex. App. –Tyler 1006 pet. denied). Furthermore, since the March 11, 2005 handwritten document does not meet requirements of a valid inter vivos gift, then a finding that it was a "gift deed" is erroneous and any attorney's fees resulting from an erroneous finding is also improper by the trial court's misapplication of legal principles.

Lastly, the trial court judge awarded appellees attorney's fees, there is no evidence that the award of attorney's fees were segregated among the causes of action or appellees. (Stewart Title Guar. Co., 822 S.W.2d). An award of attorney's fees erroneously based upon the evidence from the record of "unsegregated" attorney's fees should be reversed.

The trial court erred in the Corrected Judgment in finding that the appellants Warranty Deed dated January 7, 2009 was void, in denying the appellants requests for reimbursement on the value of improvements made to 106 Cameo San Antonio, Texas 78214 to prevent further deterioration of the structure on the property and payment of property taxes made in good faith, in awarding the appellees attorney's fees and costs in an amount of $16,876 and denying the

appellants request for attorney's fees and costs, pursuant to the record, the trial court clearly understood the correct interpretation of Texas law, but instead "simply disregarded the law" to ultimately create the incorrect findings in the Corrected Judgment. *Xtria L.L.C.*, 286 S.W.3d at 594; *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Appellants further argue that this "gross mistake" committed by trial court "is a mistake that implies bad faith or a failure to exercise honest judgment and results in decision that is arbitrary and capricious. Werline v. E. Tex. Salt Water Disposal Co., 209 S.W.3d 888, 898 (Tex. App. –Texarkana 2006), *aff'd,* 307 S.W.3d 267, 268 (Tex. 2010). As a result, Appellant's argue that the trial court's actions "probably cause[d] the rendition of an improper judgment" as to the findings specifically listed above should be reversed. *See* TEX. R. APP. P. 44.1 (a) (1).

## V.     POINT OF ERROR 5

**The trial court abused its discretion due to the judicial bias, judicial misconduct, and evidentiary rulings which constituted harmful error and resulted in the rendition of an improper judgment and/or prevented Appellants from properly presenting their case and the cumulative effect of such is harmful and reversible error?**

There is a plethora of examples and indications on the record that display the trial court's judicial bias, judicial misconduct and improper evidentiary rulings that negatively impacted the appellant's ability to present their case. Firstly, the trial judge favored the plaintiffs throughout the trial and this is evident in the record during the exchange of direct examination by the appellees' attorney and the appellants' attorney. On the first day of trial, the Court excused the

attorneys, and defendants, and asked to speak privately with John B. Wells, one of the grandchildren/plaintiffs "off the record".

The appellants further assert that on several occasions the trial court stepped into the shoes of the appellees' attorney and directly examined and cross-examined various witnesses because the appellees' attorney had a difficult time articulating an intelligible question. On the first example of the trial court judge stepping into the shoes as counsel for appellees was when attorney Anita Anderson was unable to effectively present questions to her witness Johnny Montoya Garza, and the trial court judge basically took over attorney Anita Anderson's direct examination.

In a second example of the trial court judge stepping into the shoes and acting as the Appellees' attorney is cited as follows during the direct examination of attorney North West by attorney Ana Laura Hessbrook as cited as follows:

Volume 5 Page 63

Q      "So in your opinion, there's no way that that document could have been executed if there was a concern about her understanding?

THE COURT:      "Objection as to leading is sustained."

MS. ANDERSON:   "Thank you."

THE COURT:      "Next question.

Q      I was just clarifying your answer. Would you clarify what you mean by "no, it would not."

A      "Would you ask that question again--."

Q      "Sure."

A  - - that I said that to."

Q  "My question was:  If there was a concern with regard to the testator or the person signing this document in your office, would that document-- ."

THE COURT:  "And, again, open ended."

MS. HESSBROOK:  "I forgot.  Can I have my question read back because I honestly forgot at this point."

THE COURT:  "We don't ordinarily read back questions but let me see if I can help you."

THE COURT REPORTER:  "Do you want me to read it?"

THE COURT:  "Do you have it?"

THE COURT REPORTER:  "Question: So in your

Volume 5 Page 64

opinion there's no way that that document could have been executed if there was a concern about her understanding?"

THE COURT:  "And the objection - - I think you were standing on your feet, Ms. Anderson.

MS. ANDERSON:  "I think I was."

THE COURT:  "That was the last question. Next question."

The trial court judge assisted attorney Anita Anderson to timely make objections when attorney Anita Anderson would not have made an objection on her own accord, but for the trial court judge's "cue" by interrupting or directing counsel Anita Anderson to "stand up". The trial judge has exercised beyond the "reasonable control over the mode and order of interrogating a witness" as set for in Texas Rule of Evidence 611 (a) in a manner that extremely prejudiced the Appellants.

A third example of the trial court judge stepping into the shoes of the appellees attorney or giving "cues" and/or "pointers" to attorney Anita Anderson is during the direct examination of attorney North West when Ms. Anderson objected to attorney North West as being designated as an expert witness under Texas Rule of Evidence 702, where a trial judge must determine if witness qualifies as an expert witness as cited as follows from the record testimony of attorney North West's direct examination by counsel Ana Laura Hessbrook:

Volume 5 Page 67

Q "Okay. And, generally speaking, are you aware of the principles behind having capacity to sign legal documents?"

A "Yes."

MS. ANDERSON: "I'm going to object to the attorney turning into an expert witness at this point since we didn't get served with- -."

THE COURT: "Were there any designations made?

MS. HESSBROOK: "Your Honor, I will look but I know we put Mr. West on our disclosures."

THE COURT: "But did you designate him as as expert witness?

MS. ANDERSON: "No."

MS. HESSBROOK: "I do not recall."

THE COURT: "Sustained. Though I'd love to hear it but sustained."

MS. ANDERSON: "Well, I may want to do it

Volume Page 68

both ways so, you know, actually, general issues of law would be fine and general premises. Let's do that. Thank you."

THE COURT: "Okay. So are you withdrawing your --.."

MS. ANDERSON: "I'm going to withdraw my objection."

THE COURT: Okay.

MS. ANDERSON: "Thank you."

Q "Okay. Mr. West, generally speaking, in your experience, is it possible for someone to have capacity that changes over time?

I mean, in other words, can they have

capacity at one point in a day and not later on in a day?

THE COURT: "Your objection is sustained."

MS. ANDERSON: "Thank you."

Q "Generally - -."

THE COURT: "Let me go ahead and ask you to state the objection on the record if you will, Ms. Anderson, so she knows what you're objecting to."

MS. ANDERSON: "My objection is A it's leading, B it's based on facts not in evidence. There's been no predicate of any sort laid and - -.."

THE COURT: "It's sustained."

Volume Page 69

MS. ANDERSON: - - it is obviously outside - - he has no medical expertise. Thank you."

THE COURT: "We love him as a expert with regard to his field; i.e., probate law, as we know it, and deeds as we know it but not to capacity issues which the Court would agree is more of a medical expertise though I'm sure you feel like that it's not within the legal expertise. Next question."

MS. HESSBROOK: "Yes, Your Honor. Just for record for the record purposes, my question had to

do with his experience with capacity and not him needing to have a medical license to determine if someone had capacity but I will rephrase my question."

THE COURT:     "Okay."

The trial court judge clearly showed her bias by making objections for counsel Anita Anderson, and showing favoritism by allowing attorney Anita Anderson keep changing her mind according to what would best benefit her case-in-chief, that is displayed by when attorney Anita Anderson asserted her objection, the trial judge sustained it, then on the record attorney Anita Anderson thought about it and decided to withdraw her objection as to the issue whether attorney North West would qualify as an expert witness under Rule 702 of the Texas Rules of Evidence. The trial judge determined the issue of whether attorney North West would qualify as an expert witness on Ms. Anderson desired at the time. On several occasions on the record, the trial judge and attorney Anita Anderson act as though they are co-counsel, and basically use a tag–team strategy against counsel Ana Laura Hessbrook and the cause of the Appellants.

In addition, during the re-cross-examination by attorney Anita Anderson of the witness, North West, the following from the record is cited from page 122 and 123 of North West's testimony:

Volume 5 Page 122

Q     "Right. Okay. And that's your opinion as to an acknowledgment is absolutely required on every deed? Is that what you say?"

A     Yes.

THE COURT:     "I thought you said it can't be

recorded. So if it can't be recorded, is it still not valid or it simply can't be recorded?"

THE WITNESS: "Well, it can't be recorded if the acknowledgment is not there and some curative – something has to be done, a lawsuit perhaps or something has to be done in order to make it a matter of record so that it will cure the title to the property."

THE COURT: "And my question is, I just want to be clear, it could be valid but it needs to be—in order to be recorded, legally, it needs to be cured?"

Volume 5 Page 123

THE WITNESS: "That's right."

THE COURT: "All right. Thank you. Ms. Anderson, I'm sorry to have interrupted."

MS. ANDERSON: "That's fine."

Q "And I believe you said that asking for— bringing a lawsuit to declare a valid deed will be one way of curing that deficiency, correct?"

A "I think so, yes."

Q "Thank You. That would done by declaratory judgment action?"

A (Nods head).

Line 12    Q    "You said you didn't - -

Line 13    THE COURT:    "I'm sorry. What was his response?"

Line 14    THE WITNESS:    "Yes."

Secondly, the trial court judge manipulated the testimony of witnesses by timely interrupting their testimony or it seemed to confuse the issue when the witness was testifying about throughout the record. While Irma Lemus was testifying during the direct examination, and when asked about her and her mother, Elvira Garibay Aguilar's relationship, she responded:

Volume 5 Page 20

Line 10    A    "Our conversations were—when we spoke about

Line 11        the children, I explained to her because she was a young

Line 12        girl, young lady—

Line 13    THE COURT:    "I'm sorry. How did your mom

Line 14        respond to those? Was that the question?"

Line 15    MS. HESSBROOK:    "It was.."

According to Texas case law, "the discretion vested in the trial court over the conduct of the trial is great.(*Schroeder v. Brandon*, 141 Tex. 319, 172 S.W.2d 488, 491 (1943). In so doing, a trial court "may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. (*Hogget v. Brown*, 971 S.W.2d 472, 495 (Tex.App.—Houston [14th Dist.] 1997, no pet). However, when the trial court takes a side by displaying a biased theme leaning toward appellees, and on the other hand the judicial misconduct of extreme prejudice toward the appellants and the appellant's attorney; then the trial court has committed "harmful error" or reversible error. (*Dow Chem. Co. v. Francis*, 46 S.W.3d 237

(2001). In one instance, during the re-cross- examination of attorney North West by Anita Anderson which is cited as follows from Volume 5 page 124 and 125 of North West's testimony from the record:

A "It is so ambiguous. There's two places - - on the front page, it says "therefore we agree that the house be evenly owned" by the three and then on the second page it says "this will" that the three - - that the two makers have decided to award the house at 106 Cameo to the children previously listed."

Page 125

"This is a parole evidence situation. This is ambiguous. It's conflict. Four corners of the document don't get it."

THE COURT: "I'm going to ask you to hand it to me so it doesn't go back in your folder. But I want to tell you that I'm hearing David Schleuter in my head right now when you say that. Do you know Professor Schlueter?

THE WITNESS: Yes.

THE COURT: Okay. Other questions for this witness, if any?

Q "Even though it may be ambiguously worded, is there any ambiguity in your mind that Elvira Aguilar

wanted her grandchildren to have this piece of property?"

THE COURT: "By the language that you've

read in this...

Q "By the language that you've read in this

document."

The trial court interrupted and distracted the witness attorney North West as he was commenting negatively about the March 11, 2005 handwritten letter to prevent any further continuation of testimony about the March 11, 2005 handwritten letter in any negative light on the record. In addition, on Volume 5 page 126, 127 and 128 of the record of testimony of attorney North West, which is specifically cited as follows:

Q "Does this document acknowledge that Johnny

Montoya Garza is part owner of the house?"

MS. HESSBROOK: "Your Honor, I'm going to

object. Just because the document says someone's a part

Page 127

owner doesn't mean legally they are a part owner."

THE COURT: "But previously it was stated

that it says something to that effect in there, but he's

not going to know."

Q "Okay. If the writing is signed by Johnny - -

excuse me - - Elvira Aguilar, however inexpertly

worded it is acknowledging that - - would the fact that

Elvira signed this document stating that Johnny Montoya

Garza was part owner would that - -"

MS. HESSBROOK: Your Honor - -

MS. ANDERSON: "May finish my question.

Q - -would that be a statement that could be enforced as against her and against the estate in a probate action?

MS. HESSBROOK: Your Honor, number one, it's a compound question"

THE COURT: Sustained.

Q The document says "we the above people agree that the house at 106 Cameo San Antonio, Texas belongs to Elvira Aguilar and Johnny Montoya Garza part owner on the second story of the house."

It's signed by Elvira. If nothing else had happened in this case and the case went to intestate - - into probate, that's the kind of statement that could be - - certainly could be validly asserted

Page 128

against the estate of Elvira Aguilar by Johnny Montoya Garza to establish his ownership interest, couldn't it?

MS. HESSBROOK: "Objection, Your Honor. Multiple question.

Number two, it assumes fact that are not

in evidence; and number three, it's not really a question. It's a statement by counsel.

THE COURT: "I disagree. I'm going to allow it and the - - quickly."

In analyzing the facts in the *Dow Chem. Co. v. Francis* case, the trial court judge in that case merely made sarcastic comments that did not reach the level of judicial bias or judicial misconduct. According to Canon 3 B (2) of the Texas Code of Judicial Conduct, "a judge should be faithful to the law and shall maintain professional competence in it." However, in the appellants' case, the trial court ignored the Texas Rules of Evidence and the Texas Code of Judicial Conduct, in a clear disregard that was quite obvious to appellants that the trial court was ruling against them in a prejudicial manner and in a manner that clearly lacked impartiality that is required by a tribunal. Furthermore, it became apparent to the appellants that the trial court judge became an advocate to the appellees' cause. Also, the trial court judge violated Canon 3 B (5) and (6), which requires a judge to perform judicial duties without bias or prejudice and shall not "by words or conduct manifest bias or prejudice." (Tex. Code of Jud. Conduct Canon B (5) and (6) Specifically, the trial court judge statements and rulings on the record that reflected her bias toward the appellees by inappropriately directing attorney Anita Anderson to object by hinting that an objection by attorney Anita Anderson should be made or just flat out making her own objections for the attorney. Also, when the trial court judge interrupted the direct examination of Irma Lemus, "And there are not any objections?" After the cue from the trial court judge, attorney Anita Anderson made an

objection, as cited in the direct examination of Irma Lemus by attorney Ana Laura

Hessbrook on Volume 5 page 149, 150 and 151 that is specifically stated as follows;

Q      "Is there other property that your sister,

Annette, owned before she died that would pass to the

children, I mean, as their property because their

parents owned it?

A      "Yes."

Q      "What property is that?"

A      "It's located on Dunes Street here in San

Antonio."

Q      "And is that where they lived before there

was - - was I a fire?    I thought I had heard something

about a fire."

A      "Yes."

Q      "Okay. And so does that property still exist?"

A      "Yes."

Q      "And have you had an opportunity to inquire

about ownership or taxes or anything related to that

property?"

A      "Yes."

Q      "What have you determined?"

A      "They're behind taxes."

Q      "Since when?"

Line 25    A    "2009, I believe."

Volume Page 150

Line 1    Q    What is the status of any type of foreclosure

Line 2    or anything like that? Do you know?

Line 3    THE COURT:    "I'm sorry. You had asked her

Line 4    if it's something she looked up on line."

Line 5    MS. HESSBROOK:    "Yeah. That was my

Line 6    question. If she knows what the status is.

Line 7    **THE COURT:    "And there are no objections?"**

Line 8    MS. ANDERSON:    "This whole property is new

Line 9    to me and I'm just sitting here a little dumbfound."

Line 10    THE COURT:    "If you have no objections,

Line 11    that's fine."

Line 12    MS. ANDERSON:    "Yeah, go ahead.

Line 13    That's fine."

Line 14    Q    "Were you able to determine if there was any

Line 15    foreclosure or any type of action for taxes?"

Line 16    A    "No"

Line 17    Q    "Has anybody taken care of that property?"

Line 18    THE COURT:    "And how is that relevant to

Line 19    our case at hand, Ms. Hessbrook?"

Line 20    MS. HESSBROOK:    "Well, the nature of a lot

Line 21    of the testimony was the fact that nobody took the

initiative to pay the taxes or take care of this

property."

"There's other property as well that the

children own that it's basically the same. It's just to

Volume 5 Page 151

demonstrate a pattern of behavior that basically they

own property but they don't take care of it or pay the

taxes."

THE COURT: "During this time that you're

asking, you contended that they didn't and they were not

allowed to go on to said property.

I'll ask you to ask your next question,

please."

Thirdly, the trial court judge tailored the admission of evidence and the rulings to objections made in a manner that was improper and the trial court judge ignored Rule103 (a ), of the Texas Rules of Evidence .According to Texas Rule of Evidence 611 (a), a trial judge has the authority to exclude evidence to exercise "reasonable control over the mode and order of interrogating a witness and presenting evidence for the furtherance of "ascertainment of the truth", avoid wasting time and to protect the testifying witness from "harassment or undue embarrassment." The trial judge improperly excluded relevant evidence, the possibility of the grandchildren of Elvira Garibay Aguilar of being an intestate heir to an additional real property "lot" on "Dunes street" that belonged to their mother, Annette Wells, the appellants should have been entitled to present. Thus, the impartiality line had been crossed by the trial court judge by

creating a biased atmosphere in the courtroom from continuing judicial misconduct. In addition, during the testimony of appellant Manuel Lemus, Jr., during counsel Anita Anderson's cross-examination of him, she was able to ask about other rental properties that were not related to the case at hand owned by Irma Lemus and Manuel Lemus, Jr. without the trial court's judge's interruptions or biased interventions. The trial court judge's judicial bias and judicial misconduct made it impossible for the appellants' to present a case pursuant to Texas Rules of Appellate Procedure Rule 44.1 (a) (1) and (2) and Rule 44.1 (b) and therefore, the trial court judge rendered an improper partial judgment.

Fourthly, the trial court judge made improper and inappropriate comments about the one of the appellants on a document that had not been offered into evidence. On the record, the trial court judge made an inappropriate comment about one of the appellants Irma Lemus, regarding a lawsuit that occurred several years ago and emphasized that Irma Lemus had been "sanctioned." This document that referenced this fact was read by the trial court judge when that document had not even been offered for consideration to the court to be admitted as evidence. This incident is specifically cited as follows during the re-cross-examination of attorney North West by Attorney Anita Anderson:

Volume 5 Page 101

THE COURT: "I'll do that. Ms. Hessbrook, I just had a quick question. I was just looking over Defense Exhibit Number 5 and there's a staple on there.

MS. HESSBROOK: "Oh, I didn't move to admit

Page 102

that."

THE COURT:        "It's been admitted because it's Defendants' Exhibit Number 5 and so I just need to let you know - -.."

MS. HESSBROOK:   "It was on the desk. It was never moved to be admitted. It was just for my client's testimony and recollection.

In fact, I specifically said I'm not moving to admit Number 5.

MS. ANDERSON:    "In fact, I - - and I haven't seen it.

MS. HESSBROOK:   "Correct. It was just to refresh her recollection about the signatures."

THE COURT:       "Okay. In fairness, you should know that's what's paper clipped to Defendant's Exhibit Number 5 is notes from a custody fight and in that there are other things there, specifically, that you might want to look over because – well, you might want to look those over and I'll just tell you. There was something in here I don't think it has it has any bearing on the validity of the deed or the medical power of attorney but it talks about Irma Lemus being sanctioned back on October 14th of 2002."

"I hadn't read enough except that it's

Line 15 highlighted in yellow, so I just want to make you aware

Page 103

Line 1 of that. It's part of Defendant's Exhibit Number 5.

Line 2 "Are you saying Defendant's Exhibit 5 was

Line 3 not admitted? I obviously don't know at this point."

Line 4 MS. ANDERSON: "I don't remember even

Line 5 having it - -."

Line 6 THE COURT: "So during lunch - -."

Line 7 MS ANDERSON: -- an opportunity to look

Line 8 at it."

Line 9 THE COURT: "During the lunch period, you

Line 10 can discuss that and we can housekeep and talk it over

Line 11 with the court reporter, but I'm just going to put this

Line 12 paperclip back where it was."

Line 13 "I just want to bring that to your

Line 14 attention because I was looking it over."

Line 15 MS. HESSBROOK: "I thought I was very clear

Line 16 earlier."

Line 17 THE COURT: "I'm not sure but we're going

Line 18 to get the court reporter to let us know because it was

Line 19 all on the record."

Furthermore, "such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source; however, when no extrajudicial source is alleged , such remarks will

constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.(Ludlow v. DeBerry, 959 S.W.2d 265, 271 (Tex. App. - - Houston [14th Dist.] 1997, no writ.) For a reviewing court, "to reverse a judgment on the ground of improper conduct or comments" throughout the record and the particular examples highlighted, the reviewing court must determine that the incidents of "impropriety was in fact committed" and that "probable prejudice to the appellants" occurred. (*Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App. - - Houston [1st Dist.] 1994, writ denied). Appellants further argue that this "gross mistake" committed by trial court "is a mistake that implies bad faith or a failure to exercise honest judgment and results in decision that is arbitrary and capricious. *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 898 (Tex. App. –Texarkana 2006), *aff'd,* 307 S.W.3d 267, 268 (Tex. 2010). As a result, Appellant's argue that the trial court's actions "probably cause[d] the rendition of an improper judgment" as to the findings specifically listed above and therefore the judgment should be reversed. *See* TEX. R. APP. P. 44.1 (a) (1).

Fifthly, the trial court committed an abuse of discretion by acting in a judicially biased manner when it did not grant Appellants attorney's request for a mistrial. A trial court abuses its discretion when its' actions and/or omissions displayed throughout the trial are "arbitrary" or "unreasonable." (*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.1985). The appellants' attorney specified on the record that after making numerous objections to attorney Anita Anderson asking leading questions during her direct examinations of her four clients, Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Aguilar. Furthermore, the attorney Ana Laura Hessbrook asserted after objecting that attorney Anita Anderson was basically "testifying" during the majority of the trial that the likelihood of an impartial judgment was remote and that the trial court judge should grant her motion for a mistrial

and any minimal instruction that the trial court judge instructed to attorney Anita Anderson was virtually ignored and the trial court judge continued to inappropriate allow counsel Anita Anderson to "testify" instead of the appellees testify.

Appellants further argue that the trial court erred and abused its' discretion as set forth in the Corrected Judgment in finding that the appellants Warranty Deed dated January 7, 2009 was void, in denying the appellants requests for reimbursement on the value of improvements made to 106 Cameo San Antonio, Texas 78214 to prevent further deterioration of the structure on the property and payment of property taxes made in good faith, in awarding the appellees attorney's fees and costs in an amount of $16,876 and denying the appellants request for attorney's fees and costs, pursuant to the record, the trial court clearly understood the correct interpretation of Texas law, but instead "simply disregarded the law" to ultimately create the incorrect findings in the Corrected Judgment. Xtria L.L.C., 286 S.W.3d at 594; Tanox, Inc. v. Akin, Gump,Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

In conclusion, the appellants respectfully allege that the "gross mistake(s)" committed by trial court significantly imply " bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious. Werline v. E. Tex. Salt Water Disposal Co., 209 S.W.3d 888, 898 (Tex. App. –Texarkana 2006), aff'd, 307 S.W.3d 267, 268 (Tex. 2010). As a result, Appellants' argue that as a result of all the illustrations listed above, the harmful pattern of the trial court judge to lack objectivity and impartiality, and the one-sided combination of all the trial court judge's erroneous actions "probably cause[d] the rendition of an improper judgment" as to the findings specifically listed above should be reversed. See TEX. R. APP. P. 44.1 (a) (1).

## VI.    POINT OF ERROR 6

**The trial court erred in holding, contrary to TEX. PROP. CODE § 5.003 (a) and (b), TEX. PROP. CODE § 13.002 TEX. PROP. CODE § 5.021, and TEX. PROP. CODE § 5.023, that the Warranty Deed presented by Appellants is "void" when the evidence presented by the testimony of attorney North West and the actual Notary Public, State of Texas, Kimberly L. Wynns who witnessed the grantor's capacity at the "time of its execution" exhibited the "mental capacity" to "act with an understanding in a reasonable manner the nature and effect of her signing pursuant to TEX. PROP. CODE § 13.001 (b) on January 7, 2009.**

Appellants argue that the trial court erroneously declared the Warranty Deed signed by Elvira Garibay Aguilar on January 7, 2009, in the presence of Kimberly L. Wynns void, because a certificate of acknowledgment executed in the manner provided by lay by a notary public or other officer authorized by law to take acknowledgements is evidence of the "warranty deed's" authenticity. See Tex.R. Evid. 902 (8). According to *Hardin v. State,* and applying it to the facts of the case at hand, the trial court did not "view with suspicion and distrust attempts to discredit certificates of acknowledgment." (Hardin v. State, 254 S.W.2d 898, 901 (Tex. Civ.App.-Amarillo 1952, no writ). The testimony of the notary public, Kimberly L. Wynns, that she did not have concerns as to the "capacity" of Elvira Garibay Aguilar on the date of execution. The appellees did not, according to their testimony on the record, the appellees did not produce enough evidence "to impeach a certificate". *Id.* The evidence required to "discredit" or "impeach" a certificate of acknowledgement "must be clear, cogent, and convincing beyond reasonable controversy. *Id.* Each of the grandchildren, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, according to their testimony all stated the same or similar verbiage pertaining to Elvira Garibay Aguilar's demeanor. However, when Laura Ashley Wells and Johnny B. Wells were

asked about their visits with their grandmother, they each testified that Elvira Garibay Aguilar commented or asked questions about her great-grandchildren. Not one person on the record testified that Elvira Garibay Aguilar was in a state that would surely render any person unable to have the capacity to execute a deed. In fact, no one, other than Irma Lemus and the notary Kimberly L. Wynns saw or could testify to Ms. Aguilar's condition on the day the deed was signed and executed.

In *In re Estate of Johnson*, the daughter of decedent argued that her mother lacked mental capacity when she executed a deed to her brother and sought a declaratory judgment to set aside the deed. The trial court denied the daughter's petition for declaratory judgment and she appealed. The appellate court affirmed the trial court decision and expressed the fact that the decedent had "experienced dementia and Alzheimer's" but "that showed improvement of her symptoms with medication." ( *In re Estate of Johnson*, 340 S.W.3d 769 (Tex. Civ. App.—San Antonio, 2011, *aff'd*).

The trial court erred when it did not focus "the condition of the testator's mind on the day the will was executed." See Lee v. Lee, 424 S.W.2d 609, 611 (Tex. 1968). The granddaughter of Elvira Garibay Aguilar testified that she was visiting Elvira Garibay Aguilar in the nursing home on the day that Appellant, Irma Lemus picked her mother, Elvira Garibay Aguilar, to take her to Starbucks for a meeting with the notary Kimberly L. Wynns. Laura Ashley Wells testified that her grandmother lacked the "testamentary capacity" to execute a warranty deed. Appellant, Irma Lemus, testified that her mother, Elvira Garibay Aguilar, asked her to have a Warranty Deed prepared so that the 106 Cameo can be maintained and because she did not want her former "partner" Johnny Montoya Garza to get any interest in the aforementioned property. In the year 2008 and 2009, no one was residing at the residence because it was not in a habitable condition

according to the testimony of Appellant, Manuel Lemus, Jr. and by the testimony of all the grandchildren. Laura Ashley Wells was living in an apartment in Boerne and later in San Antonio and not residing in 106 Cameo San Antonio, Texas 78214. John Rene Aguilar was living with his grandfather, former husband of Elvira Garibay Aguilar and not residing at 106 Cameo San Antonio, Texas 78214. John Rene Aguilar testified to an attempt to turn on electricity at 106 Cameo San Antonio, Texas 78214, which lasted a brief time, because he testified he did not reside there permanently after he moved with his to Boerne with Appellants Irma Lemus and Manuel Lemus, Jr. when he was recovering from cancer. Johnny B. Wells testified that he was "couch hopping" and staying with friends, that he would only go to 106 Cameo San Antonio, Texas 78214 to pick-up items, but he testified he did stay there or resided at 106 Cameo San Antonio, Texas 78214 because there was not any electricity and/or water, the utilities necessary to reside in a home. Johnny Montoya Garza, who testified that he was also given full custody of the grandchildren John Rene Aguilar, Laura Ashley Wells and Johnny B. Wells, but all the grandchildren left the residence permanently by 2006. Johnny B. Wells testified that "he was thrown out on the street" and that he was basically on his own at 16 years old, when he moved out of his Aunt Nanette's home in 2008. Johnny B. Wells testified that he was unable to see his grandmother at the nursing home because of his lack of transportation and the fact that he was a "kid." Johnny Montoya Garza also testified that he moved away from 106 Cameo San Antonio, Texas 78214 in 2006 when Elvira Garibay Aguilar and Johnny B. Wells moved to Nanette Aguilar's home. Johnny Montoya Garza testified that he visited Elvira Garibay Aguilar at Nanette Aguilar's home maybe two times, and that he never saw Elvira Garibay Aguilar again, not even to visit Elvira Garibay Aguilar in the nursing home. She was in the nursing home beginning November 14, 2008 until her death in 2011. Elvira Garibay Aguilar intentions,

according to Appellant Irma Lemus, was that she did not want Johnny Montoya Garza to have any interest in 106 Cameo San Antonio, Texas 78214, because he abandoned her and never visited her at the nursing home and because he failed to take care of the grandchildren,

Therefore, on the day that Elvira Garibay Aguilar executed the Warranty Deed, Kimberly L. Wynns testified that she did "not have any concerns regarding the mental capacity" of Elvira Garibay Aguilar. Thus, such was "the proper inquiry is the condition of the grantor's mind on the day the deed was executed." *Bradshaw v. Naumann*, 528 S.W.2d 869, 875 (Tex. Civ. App.—Austin 1975, writ dism'd). Attorney North West and his legal assistant did not have any concerns on January 16, 2009 when Elvira Garibay Aguilar signed the Durable Power of Attorney and the Medical Power of Attorney. Thus, appellants provided direct testimony of "acts, demeanor, and mental condition" of Elvira Garibay Aguilar from her daughter, Irma Lemus, her son-in-law Manuel Lemus, Jr., her granddaughter Denise that supports the contention that Elvira Garibay Aguilar did have the mental capacity to sign a Warranty Deed because such demonstrated the "probability of being the same condition that existed at the time" she signed the deed. (*Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App.—Fort Worth 1998, no pet.). The appellees who had the burden of proving that Elvira Garibay Aguilar lacked the mental capacity on January 7, 2009 provided medical notes from a physician at Normandy Terrace Nursing Home, an affidavit that was extremely "conclusory" that lacked the essential requirements necessary to be admissible evidence. (*Tomlinson v. The Estate of Jesee Lawhon Theis, Deceased*, No. 03-07-00123-CV (Tex. App. - - Austin 2008). Furthermore, there were no medical records which reflected the day of the execution of the Warranty Deed and no witness was presented to contradict the numerous other witnesses who saw Ms. Garibay on the day of the Warranty Deed's execution, especially the notary. The evidence provided by appellees was not "of a satisfactory and convincing

character" that will lead a reasonable person to more than a "mere" suspicion of lack of mental capacity. *See Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App.—Fort Worth 1998, no pet.). Furthermore, "even people of admitted unsound mind may have lucid intervals, and in such lucid interval be possessed of testamentary capacity." (*Estate of Grey*, 279 S.W.2d 936, 939 (Tex. Civ. App. – El Paso 1955, writ ref'd n.r.e.).

## VII.    POINT OF ERROR 7

**DID THE TRIAL COURT ABUSE ITS DISCRETION BY NOT DISMISSING THE SPECIFIC CLAIM BY APPELLANTS TO DECLARE BY DECLARATORY JUDGMENT § 37.009 THAT THE MARCH 11, 2005 HANDWRITTEN LETTER BECAUSE IT WAS BARRED BY RES JUDICATA BECAUSE THE ISSUE OF WHETHER IT WAS A "GIFT DEED" COULD HAVE BEEN RAISED BY THE PRIOR LAWSUIT OF APPELLANTS AS AN ALTERNATE CLAIM AND IT WAS NOT, PURSUANT TO THE PRECEDENT ESTABLISHED IN THE CASE OF *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d. 78, 88-87 (Tex. 2008)?**

Appellants argue that John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells had filed their initial lawsuit in 2009, as pointed out by their attorney in her opening statement on the record and through various points of her questioning witnesses throughout the record. The first lawsuit was an attempt to prove that the March 11, 2005 handwritten document was a "holographic will". However, the appellees could have argued in their lawsuit, in the alternative, that it was an "inter vivos gift". Thus, their specific claim for declaratory judgment to declare a property interest in 106 Cameo San Antonio, Texas 78214 is barred by res judicata. (*Barr v. Resolution Trust Cor p.*, 837 S.W.2d 627, 628 (Tex. 1992); *Robinson v. Garcia*, 5 S.W.3d 348, 351-352 (Tex. App. –Corpus Christi, 1999, pet. denied). The appellees' claim to assert that the March 11, 2005 document was an "inter vivos gift" claim existed when the appellees filed their first lawsuit against appellants. The intent for the doctrine of res judicata is to "prevent vexatious litigation, maintain the stability of court decisions, promote judicial economy and

prevent double recovery". (Barr v. Resolution Trust Corp., 837 S.W.2d 627, 629 (Tex. 1992). Appellants argue that the elements of an inter vivos gift have not been met, thus, the March 11, 2005 handwritten document fails to meet the requirements to be an inter vivos gift under Texas law. In addition, the appellants argue that the appellees could have included the alternate claim in the 2009 lawsuit that if the March 11, 2005 handwritten document fails as a "holographic will" that in the alternative, present the possibility that it may meet the elements of an inter vivos gift. The appellants argue that since they did not include the claim for an inter vivos gift in the 2009 lawsuit, and that the claim did "exist" at that time that, the appellees should be barred from any recovery, declaratory judgment, and attorney's fees because they are barred by res judicata that were raised specifically from the March 11, 2005 handwritten document. (*Hernandez v. Del Ray Chem. Int'l.*, 56 S.W.3d 112 116 (Tex. App. –Houston [14 Dist.] 2001, no pet.); *Robinson v. Garcia*, 5 S.W.3d 348, 351-352 (Tex. App. –Corpus Christi, 1999, pet. denied). In the *Robinson* case, the appellants in that case argued that because both the tax suit and fee suit that resulted from their former attorney's representation of appellants in a prior lawsuit. Because the plaintiffs had not included the tax lawsuit within the fee lawsuit initially, it was barred by the fee lawsuit. (*Hernandez v. Del Ray Chem. Int'l.*, 56 S.W.3d 112 116 (Tex. App. –Houston [14 Dist.] 2001, no pet.).

## VIII.   POINT OF ERROR 8

**DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED THE REIMBURSEMENT CLAIM OF APPELLANTS AND IN DENYING THE APPELLANTS' CLAIM FOR ATTORNEY'S FEES AND COSTS FOR DEFENSE OF THE TRESPASS TO TRY TITLE CLAIM AND THE REQUEST FOR DECLARATORY JUDGMENT?**

Appellant further argue that the trial court erred and abused its' discretion as set forth in the Corrected Judgment in finding that the appellants Warranty Deed dated January 7, 2009 was void, in denying the appellants requests for reimbursement on the value of improvements made to 106 Cameo San Antonio, Texas 78214 to prevent further deterioration of the structure on the property and payment of property taxes made in good faith and in denying the appellants request for attorney's fees and costs because the evidence was factually and legally insufficient to support the findings made in the Corrected Judgment. The trial court clearly understood the correct interpretation of Texas law, but instead "simply disregarded the law" to ultimately create the incorrect findings in the Corrected Judgment. (*Xtria L.L.C.*, 286 S.W.3d at 594; (*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Appellants argue that reimbursement to "a person who in good faith makes improvements upon property owned by another is entitled to compensation". (*Dakan v. Dakan*, 83 S.W.2d 345 (Tex. 1976). The source of the issue of reimbursement stems from the equity principle.

The appellants argue that in the year 2006, 2007, 2008, both Irma Lemus and Manuel Lemus, Jr. noticed that 106 Cameo San Antonio, Texas 78214 was abandoned and "falling apart", according to their testimony on the record. From the actual observations of Irma Lemus and Manuel Lemus, Jr., 106 Cameo San Antonio, Texas was unoccupied. In addition, the Bexar County property taxes were not being paid. Thus, Irma Lemus and Manuel Lemus, Jr., through their observations realized that 106 Cameo San Antonio, Texas 78214 had essentially been abandoned. Irma Lemus and Manuel Lemus, Jr. were never given a copy of the March 11, 2005 handwritten document, nor was the March 11, 2005 handwritten document filed in deed records. Subsequently, Ms. Aguilar expressed concern to Irma Lemus during the visits at the

nursing home after her admission of November 18, 2008, about 106 Cameo San Antonio, Texas 78214, and the fact that she did not want Johnny Montoya Garza to have any part of this home. Johnny Montoya Garza testified that he never visited her in the nursing home, only visited her maybe twice at the residence of Nanette Aguilar in the year 2006, and he also testified that he did not attend the service when Elvira Garibay Aguilar died on July 11, 2011. So, for five years, beginning in 2007 to the date of her death in July 11, 2011, Johnny Montoya Garza had no contact with Elvira Garibay Aguilar his life "partner." Thus, when Elvira Garibay Aguilar transferred title to 106 Cameo San Antonio, Texas 78214 to appellants Irma Lemus and Manuel Lemus, Jr., on January 7, 2009, the appellants in good faith caught up with the property taxes that had not been paid since 2006, and made various improvements on 106 Cameo San Antonio, Texas 78214 in an attempt to eventually make the home livable and habitable. The appellants argued that they acted in good faith and had an equitable interest in 106 Cameo San Antonio, Texas 78214 regardless of the trial court's erroneous finding.

According to § 22.021 of the Texas Property Code, the trial court abused its discretion when incorrectly applying Texas law in denying the appellants request for reimbursement of the property taxes and improvements made to 106 Cameo San Antonio, Texas 78214, and by their testimony, the appellants did establish that they acted in good faith and pursuant to the Warranty Deed of January 7, 2009 which was signed in the presence of a notary because "a notary certificate is conclusive" and unless fraud exists, it "cannot thereafter question either its execution or acknowledgement."

Thus, the appellants were acting in good faith and are entitled to reimbursement of improvements made to 106 Cameo San Antonio, Texas 78214 that cannot be outweighed by the potential rental value, the value of the use and occupation of the premises by the alleged valid

owners. The trial court abused its discretion in a legal sufficiency challenge, when it denied the reimbursement claim of appellants because the record reflected evidence which establishes conclusively the opposite of the finding of the trial court that the appellants were not entitled to reimbursement for improvements made. The appellants argue that the record reflects a complete absence of evidence that the appellants acted in bad faith. Thus, the trial court should have ordered that appellants had an equitable interest in 106 Cameo San Antonio, Texas 78214 for the improvements made to it and the trial court should have held that the appellants did establish legally sufficient evidence on the record that they acted in good faith. (*City of Keller v. Wilson*, 168 S.W.3d 802, 827, 48 Tex. Sup. Ct. J. 848 (Tex. 2005). Furthermore, the appellants argue that the court of appeals should "consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not." *Id.* The appellants urge the court of appeals to reverse the denial of appellants claim for reimbursement, reverse the denial of attorney's fees claimed by appellants and reverse the finding that the appellants did not act in good faith because they did and the record supports reversal of trial court's findings stated here. (*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334, 42 Tex. Sup. Ct. J. 43 (Tex. 1998), *cert. denied*, 526 U.S. 1040, 143 L. Ed. 2d 500, 119 S. Ct. 1336 (1999).

In *In the Estate of Jenkins* (2006 Tex. WL 1452669 (Tex. App. – [2nd Dist.] Fort Worth), a son is appealing the trial court's denial of his alleged parol gift from the decedent father finding that the decedent did not make a parol gift to son of a five-acre tract of land. The appellant never took possession of the land under a gift of his father, and that the appellant never made any type of improvements to the land under the factually and legally sufficiency challenges. The court of appeals affirmed the trial court's findings. Witnesses testified that the decedent father would not

have given his son the alleged 5-acres out of the 68-acre tract of land by oral gift because the decedent father indicated to those witnesses that his son was a drug addict and would sell land for drugs. In addition, the son could not provide receipts to confirm the costs of improvements on the land son made, however, the record actually reflected that the decedent father paid for all the improvements. In applying the facts of the *In the Estate of Jenkins* case, to the case at hand, the son did not make any improvements of the 5-acres nor did he pay the property taxes. In his testimony, when asked whether he paid the property taxes on the property, Joe replied, "No. It wasn't deeded to me yet." This is similar to the grandchildren appellees who claimed that 106 Cameo San Antonio, Texas 78214 belonged to them, but never invested any money ever in 106 Cameo San Antonio, Texas 78214.

The Corrected Judgment in subsection 2.2 stated that the March 7, 2005 handwritten document "effected a present transfer of title of 106 Cameo, San Antonio, Texas, to Plaintiffs John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, subject to a life estate of Elvira Aguilar and Johnny Montoya Garza." In subsection 2.3 of the Corrected Judgment, which incorrectly refers to the March 7, 2005 document as the *March 5, 2005* document that the petition for declaratory relief of John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells is granted. However, appellee Johnny Montoya Garza as plaintiff, brought suit for declaratory judgment that the same document validly acknowledged an oral conveyance by Elvira Aguilar to him of one-half ownership interest in the property by request for declaratory judgment that he is an undivided one-half interest in the property, the trial court denied Johnny Montoya Garza's request for declaratory relief, which is stated in subsection 3.3 of the Corrected Judgment. The legal sufficiency of the finding that the March 7, 2005 handwritten document in subsection 2.4 of the Corrected Judgment stating that John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells

are title owners of the premises at 106 Cameo, San Antonio, Texas is inconsistent subsection 2.2 that the same document effected a present transfer of title to the grandchildren subject to a life estate of Elvira Aguilar and Johnny Montoya Garza. In analyzing this situation, since Johnny Montoya Garza is still alive, then according to subsection 2.2 Johnny Montoya Garza still has a right to occupy 106 Cameo San Antonio, Texas 78214 for his life. The Corrected Judgment does not stipulate who would be responsible for the property taxes and who has a right to possession of the property.

In addition, because the trial court held that the appellants acted with knowledge that other parties claimed legal title to the property, which is not possible by the evidence on the record, each grandchild testified that they did not pay property taxes in 2006. 2007, or 2008 because the property did not belong to them, stating, "Why am going to pay for something that is not mine?" by Johnny B. Wells.

In applying this equity principle, the appellees did not act in an equitable manner, reasonable manner, and/or in a due diligent manner, which is evident on the record by their testimony. Thus, the trial court abused its discretion when it held that the "the value of any improvements made is outweighed by the value of the use and occupation of the premises by the valid owners" as stated in the Corrected Judgment. The grandchild Johnny B. Wells testified that he could not live at 106 Cameo San Antonio, Texas 78214 because there was no running water or electricity. Appellant Manuel Lemus, Jr. testified that 106 Cameo San Antonio, Texas 78214 in 2008 and 2009 the home itself was not in a condition in which would have been safe for anyone to live in or inhabitable. At the time in question, 106 Cameo San Antonio, Texas 78214 did not have an actual measurable "value of the use and occupation of the premises by the valid owners."

## E. CONSLUSION

The trial court erred and abused its discretion by finding that the document titled "Will" was in fact a gift deed. The trial court erred and abused its discretion in finding the subsequent Warranty Deed void. The trial court erred and abused its discretion in denying Appellant's request for reimbursement of the payment of taxes and improvements on the subject property. The trial court erred and abused its discretion in awarding Appellee's attorney fees.

## F. PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellants, IRMA AND MANUEL LEMUS, respectfully request that the Judgment herein be reversed, and that this cause be remanded to the trial court for further proceedings, or alternatively, that the Court render judgment that the handwritten document failed as a deed, that the Warranty Deed of January 7, 2009 is valid, and/or that judgment for Appellant's costs of improvements and payment of property taxes be awarded to Appellants. Appellants respectfully requests the Court reverse the award of attorney fees granted by the trial court. Appellants also pray for the Court to grant such other and further relief which this Court deems just, equitable and fair.

**ANA LAURA HESSBROOK**
4100 N.W. Loop 410, Ste 105
San Antonio, Texas 78229
Tel: (210) 706-9466
Fax: (210) 706-9467
BY: _____
ANA LAURA HESSBROOK
State Bar No. 00791481
Email: hessbrook@sbcglobal.net
Attorney for Appellants

## **Certificate of Service**

I certify that a true and correct copy of the above foregoing has been served on every party and attorney of record on April 20, 2015 pursuant to the Texas Rules of Civil Procedure.

_____
ANA LAURA HESSBROOK

# No. 04-14-00609-CV

# COURT OF APPEALS
# FOURTH COURT OF APPEALS DISTRICT OF TEXAS
# SAN ANTONIO

## IRMA LEMUS AND MANUEL LEMUS, JR.,

Appellants,

VS.

## JOHN RENE AGUILAR, JOHNNY B.WELLS, LAURA ASHLEY WELLS, AND JOHNNY MONTOYA GARZA,

Appellees.

Appeal from the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-00251
Honorable Antonia Arteaga, Judge Presiding

## APPELLANTS' APPENDIX

1. Handwritten "Will" of Johnny Montoya Garza and Elvira Garibay Aguilar
2. Warranty Deed of January 7, 2009
3. Plaintiffs' Second Amended Petition
4. Defendants' First Amended Answer
5. Corrected Final Judgment

Will From Johnny Montoya Garza
And Elvira G. Aguilar.

We the above people agree that
the house at 106 Cameo San Antonio
Texas 78214 belongs to Elvira G.
Aguilar And Johnny Montoya Garza.
Part owner on 2nd story of house
was built because of the children
that were awarded to Ms Elvira
G. Aguilar at the time of her
daughters death the State awarded
the children to Ms Elvira g. Aguilar
then we decided to Add onto the
house to make Rooms for the
Children there for we agree
that the house be evenly owned
By John Rene Aguilar Laura Ashley
Wells And Johnny B. Wells. Nothing
will be done to the house with-
out the Authorization of John
Rene Aguilar Johnny B. Wells And
Laura Ashley Wells. In case of a
disagreement on the Aguilar Part
And the children Listed above
have the final Say in what is
to be done to the house at

EXH. "B"

106 Cameo SanAntonio Texas 78214.

John Rene must keep me Informed of all dicissions so that I Johnny Montoya Garza can be as helpful to the Children so that there is no harsh discissions made. I Johnny Montoya Garza am expecting that all family members except this will that Elvira G Aguilar And Johnny Montoya Garza have decided to award the house at 106 Cameo to the Children Listed Previously I Johnny Montoya Garza Am positivly Sure that there will be no disagreement between the families, So I hope tha John David Aguilar And Nannette Aguilar And other family members Respect the wishes of Elvira G Aguilar + Johnny Montoya Garza please have all family members Sign this agreement will. May God be with you All in these hard times please agree to your Mom And

over→

my discission. We had discussed this between us when the children were put in our hands.

Thank-you All Very much.

Johnny Montoya Sr.

Elvira G. Aguilar

Signed this day of march 11-05

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# WARRANTY DEED

STATE OF TEXAS §
                §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF BEXAR §

THAT, ELVIRA AGUILAR, hereinafter called Grantor (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable considerations to Grantor in hand paid by IRMA A. LEMUS and MANUEL V. LEMUS, JR., hereinafter called Grantee (whether one or more), the receipt of which is hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto Grantee, whose mailing address is as hereinafter set forth, the following described real estate, together with all improvements thereon, situated in Bexar County, Texas, being more particularly described as follows, to-wit:

Lot 4, Block 2, New City Block 12291, CAMPO GARDENS ADDITION, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 3525, Page 192, Deed and Plat Records of Bexar County, Texas, also known as 106 Cameo, San Antonio, Texas.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging, unto the said Grantee, Grantee's heirs, successors and/or assigns forever. And Grantor does hereby bind Grantor, Grantor's heirs, executors, administrators, successors and/or assigns TO WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Grantee herein, Grantee's heirs, successors and/or assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance and the warranties of title given herein are made subject to any and all restrictions, easements, setback lines, covenants, conditions and reservations, of record affecting the property herein conveyed.

EXECUTED ON THE FOLLOWING DATE: January ___, 200_.

_____
ELVIRA AGUILAR

(ACKNOWLEDGEMENT)

STATE OF TEXAS §
COUNTY OF BEXAR §

This instrument was ACKNOWLEDGED before me, on this the ____ day of January, 200_, by ELVIRA AGUILAR.

KIMBERLY L. WYNNS
Notary Public, State of Texas
My Commission Expires
January 18, 2009

_____
Notary Public, State of Texas

This instrument was prepared solely from information and on instructions given to this office by our client. No title opinion or other information has been furnished to or has been, or is being, given by this office to any person in connection with the preparation of this instrument or the accuracy of the information contained herein.

GRANTEE'S MAILING ADDRESS:
AFTER RECORDING RETURN TO
GRANTEE AT:
Irma A. Lemus
Manuel V. Lemus, Jr.
27213 Bent Trail
Boerne, TX 78006

PREPARED IN THE OFFICE OF:
WEST & WEST ATTORNEYS, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230

EXH. "A"

Doc# 20090003417
# Pages 2
01/08/2009    14:57:42 PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD RICKHOFF COUNTY CLERK

Fees 16.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
01/08/2009    14:57:42 PM
COUNTY CLERK, BEXAR COUNTY TEXAS



FILED
3/10/2014 7:45:44 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Annabelle Kung

## CAUSE NO. 2012-CI-00251

| | | |
|---|---|---|
| JOHNNY MONTOYA GARZA, | § | IN THE DISTRICT COURT |
| JOHN RENE AGUILAR, JOHNNY B. | § | |
| WELLS and LAURA ASHLEY WELLS | § | |
| | § | 225th JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| IRMA LEMUS and MANUEL LEMUS, JR. | § | BEXAR COUNTY, TEXAS |

### SECOND AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs JOHNNY MONTOYA GARZA, JOHN RENE AGUILAR, JOHNNY B. WELLS and LAURA ASHLEY WELLS, and make and file this their Second Amended Original Petition complaining of Defendants IRMA LEMUS and MANUEL V. LEMUS, JR. and seeking the following relief:

1.1    Plaintiffs request this Honorable Court to declare as void and set aside a deed purportedly signed by Elvira Aguilar on January 7, 2009 conveying title to her home at 106 Cameo, San Antonio, Texas to Defendants, for reason that Elvira Aguilar was suffering from advanced Alzheimer's disease, and not mentally competent to understand that she was conveying ownership.  Furthermore, the deed should be set aside as it is void for want of consideration.

1.2    Plaintiffs further seek declaratory judgment that an instrument signed on March 11, 2005 by Elvira Aguilar concerning ownership and disposition of the property to plaintiffs, meets all the requirements of a deed and is sufficient to convey legal title.

1.3    In the alternative, Plaintiff Garza seeks declaration that by such document Elvira Aguilar acknowledged conveyance or parol gift of one-half interest in the property to him, and that in reliance and as consideration made permanent and significant improvements to the home.

1

1.4    Plaintiffs further sue for trespass to try title to establish that their title is superior to the purported title fraudulently obtained by Defendants IRMA LEMUS and MANUEL LEMUS, JR., that defendants took such title without consideration and with full knowledge of the Plaintiffs ownership interest, and wrongfully excluded them from their home in bad faith, and for attorneys fees and costs as provided by statute. In support thereof, Plaintiffs would show as follows:

## II. DISCOVERY PLAN

2.1    Discovery should be conducted under Level 2 of Rule 190.4 of the Tex. R. Civ. Proc.

## III. OBJECTION TO ASSIGNMENT OF VISITING JUDGE

3.1    Plaintiffs object to the assignment of a retired, former, or senior judge to hear this case or any part thereof.

## IV. JOINDER OF NECESSARY PARTIES

4.1    The necessary parties to this lawsuit are the surviving statutory heirs of Elvira Aguilar.

4.2    Defendants IRMA LEMUS, daughter of Elvira Aguilar and MANUEL LEMUS, Jr., Irma's husband, have been served with citation and made appearance herein.

4.3    JOHN DAVID AGUILAR is the sole son of Elvira Aguilar and has signed and filed a waiver of notice of citation and executed a deed quitclaiming any interest he has in the property as an heir of Elvira Aguilar to Plaintiffs.

4.4    IRENE LAMBERT is the sole surviving daughter of Elvira Aguilar other than Defendant and has appeared and answered herein and executed a deed quitclaiming any interest she has in the property as an heir of Elvira Aguilar to Plaintiffs.

4.5    NANETTE AGUILAR did not survive Elvira Aguilar and left no survivors.

2

4.6    ANNETTE AGUILAR did not survive Elvira Aguilar and left as survivors John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, Plaintiffs.

## V. JURISDICTION AND VENUE

5.1    The property the subject of this suit is located in San Antonio, Bexar County, Texas and the amount in controversy is in excess of the Court's minimum jurisdictional limit.

5.2    The district court has exclusive jurisdiction over this dispute concerning title to real property.

## VI. STATEMENT OF FACTS

6.1    Plaintiff JOHNNY MONTOYA GARZA would respectfully show that, by reason of the instrument signed March 11, 2005 by Elvira Aguilar, hereinafter attached as Exhibit "A," he is one-half owner and Intervenors JOHN RENE AGUILAR, JOHNNY B. WELLS and LAURA ASHLEY WELLS are joint owners subject to the life estates of Johnny Montoya Garza and Elvira Aguilar, of the real property located at 106 Cameo, San Antonio, Bexar County, Texas, the legal description of which is described in the deed records of Bexar County as follows:

> Lot 4, Block 2, NCB 12291, Campo Gardens Addition, in the City of San
> Antonio, Bexar County, Texas, according to plat thereof recorded in Volume
> 3525 Page 192, Deed and Plat Records of Bexar County.

6.2    Elvira Aguilar had acquired sole title to the property in 1983 by special warranty deed incident to her divorce from John B. Aguilar in 1983.  Plaintiff Johnny Garza lived with Elvira Aguilar as her partner at 106 Cameo, San Antonio, Texas since 1984, and they occupied the same as their home.

6.3    In 1990, Plaintiffs JOHN RENE AGUILAR, LAURA ASHLEY WELLS, and JOHNNY B. WELLS were orphaned when their parents Annette Aguilar Wells and

3

Johnny Wells were killed in a motorcycle accident. The children were ten years, three years and eighteen months of age respectively when the tragedy occurred. The family was living with Elvira Aguilar and Johnny Garza at the time of the accident.

6.4    An insurance claim had been begun by Elvira Aguilar as next friend of the minor children against State Farm Insurance, when Defendant Irma Lemus filed suit for sole managing conservatorship although the children never lived with her. Elvira Aguilar and Johnny Montoya Garza were ultimately made managing conservators for the children, and raised them as their own. The insurance money was placed in trust for the children until they reached majority.

6.5    In 1992, in order to adequately house the children, Elvira Aguilar and Johnny Montoya Garza, Plaintiff, jointly borrowed $30,000 to build a second floor on the property. Johnny Garza provided the physical labor, tools and skill to build it, was personally liable and paid on the home improvement loan and for other materials from his income. Garza was co-signer on Elvira Aguilar's bank account, and deposited his earnings as a truck driver into her account.

6.6    The instrument attached as Exhibit "A," was executed in March of 2005, at a time when Elvira Aguilar was of sound mind and executory capacity. Although denominated as the "will " of both Elvira Aguilar and Johnny Montoya Garza, the instrument operates as a deed. In the instrument Elvira Aguilar acknowledges Johnny Montoya Garza as co-owner of the property at 106 Cameo, San Antonio, Texas and they jointly transfer their interests subject to a life estate in their favor to John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells.

6.7    Plaintiff Johnny Montoya Garza would respectfully show that in 2006 Elvira Aguilar began to show signs of dementia and was unable to care for herself while Johnny Garza was out

4

of town for trucking work. Her daughter Nanette Aguilar took her in to live with her in 2007. Nanette Aguilar was then in recovery from treatment for breast cancer. In late 2008, the cancer was terminal. Nanette was admitted to hospice care at Normandy Terrace Nursing Home for hospice and Elvira was admitted to the Alzheimer's unit. Her son David Aguilar, managed her affairs with the nursing home.

6.8 On November 15·2008, Nanette Aguilar died. Elvira Aguilar was so mentally incapacitated by then that she could not apprehend or remember that Nanette had died, could not remember family members' names although she was glad to see them, confused her grand-sons with Johnny Garza, could not find her way to her own room, could not feed, dress, bathe or groom herself, wandered the hallways constantly, and was delusional and often violent.

6.9 Despite this clear mental incapacity, on or about January 7, 2009, her daughter, Defendant IRMA LEMUS, and her husband, MANUEL LEMUS, JR. had Elvira Aguilar "sign" the warranty deed instrument hereinafter attached as Exhibit "B" to this petition granting the home at 106 Cameo to themselves. The deed was purportedly made before Kimberly L. Wynns, notary public, at the offices of West and West Attorneys, P.C. in San Antonio, Texas. Irma Lemus admits there was no consideration paid for the deed other than "love and affection," although she had not talked to her in years.

6.10 At the time the deed was executed, the Lemuses knew that Elvira Aguilar considered Johnny Montoya Garza as one half owner of the house at 106 Cameo and that her mother wanted her grand-children John Rene Aguilar, Johnny B. Wells and Laura Ashley Wells to have it in the future.

5

6.11 After the Defendants fraudulently obtained the deed from Elvira Aguilar they dispossessed Garza and the grand-children from the house by changing the locks and utilities and telling the neighbors that they were the owners, and that Garza was not to enter the premises. He but could not afford to legally challenge to legally challenge Irma and Manuel Lemus, Jr. at the time.

6.12 David Aguilar brought suit against Irma Lemus and Manuel Lemus, Jr. to have the January 7th, 2009 deed declared void for want of capacity, in Cause No. 2009-CI-03469, *Elvira Aguilar by and through David Aguilar as Next Friend,* 285th Judicial District Court of Bexar County. The deed was not only wrongful and fraudulent but it threatened the Medicaid eligibility of Elvira Aguilar. Johnny Montoya Garza was invited to intervene to assert his interest pursuant to the "will " and the children also joined. When defendants brought a summary judgment motion on the "will," prior to any final rulings of the court, and in order to amend their pleadings, pursue additional evidence, and preserve their rights, Plaintiffs non-suited their case without prejudice to refile.

6.13 Johnny Montoya Garza's renewed claim for trespass to try title was filed within three years of the of January 7, 2009 purported deed to the Lemuses. The statutory heirs John Rene Aguilar, Laura Ashley Wells and Johnny B. Wells joined to set aside the Lemus deed as void for want of capacity within four years.

VII. PETITION TO SET ASIDE DEED OF JANUARY 7, 2009 TO DEFENDANTS

7.1 A deed is *void* where at the time of its execution the grantor was laboring under such a degree of mental infirmity as made him incapable of understanding in a reasonable manner the nature and effect of his act. Plaintiffs request this Honorable Court to declare void and to annul,

6

cancel, and set aside the deed of January 7, 2009 from Elvira Aguilar to Irma and Manuel Lemus, Jr.

7.2    Plaintiffs would show that Elvira Aguilar was unable to understand the nature and consequences of signing the document, if she even understood that she was signing her name, due to advanced Alzheimer's disease.   Furthermore, there was no consideration for the deed, other than by Irma Lemus's admission, that consideration was her "love and affection."

7.3    Plaintiffs would show that at the time of the making of the deed, Elvira Aguilar was mentally incapable of even identifying her children and grand-children, was totally unable to care for herself, could not remember or comprehend that the daughter who had been taking care of her for two years had just died, and otherwise incapable of making any kind of knowing and willful act of conveyance.

7.4    Plaintiffs therefore request this Honorable Court to find that at the time of the deed of January 7, 2009 allegedly transferring title to the Lemuses, Elvira G. Aguilar was mentally incapable of making such a transfer by reason of her Alzheimer's disease, and to declare the deed *void* for lack of mental capacity of the grantor.

## VIII.   REQUEST FOR DECLARATORY JUDGMENT THAT ELVIRA AGUILAR CONVEYED HER REAL PROPERTY TO PLAINTIFFS BY MARCH 11, 2005 DOCUMENT

8.1    Plaintiffs seek declaratory judgment under the Texas Declaratory Judgment Act Sec. 37.001 et. seq.  Tex. Civ. Prac. & Rem. Code that the instrument denominated as "will" and attached as Exhibit "A" constitutes a good and valid deed, i.e. a conveyance by Elvira Garibay Aguilar of the property at 106 Cameo, San Antonio, Texas to Johnny Montoya Garza of one-half ownership and a conveyance of the property by both Aguilar and Garza to the grand-children John Rene Aguilar, Johnny B. Wells and Laura Ashley Wells subject to a life estate.

7

8.2     Plaintiffs would show that the document attached as Exhibit "A" fully meets the requirements of a deed as stated in Tex. Prop. Code Sec. 5.021 that "a conveyance of an estate of inheritance, a freehold, or an estate for more than one year in land must be in writing and subscribed and delivered by the conveyor."

8.3     Additionally, even though denominated as a "will," Exhibit "A" clearly acknowledges that Garza already had a one-half ownership interest in the property at 106 Cameo. Property may be conveyed orally and such a conveyance enforced if the donee makes permanent and valuable improvements on the property, which Johnny Montoya Garza in fact made, i.e. the construction of the second story on the home.

8.4     Even though the document is denominated a "will," it clearly establishes a conveyance by both Garza and Aguilar of the property to the grand-children upon their death. The Tex. Prop. Code Sec. 5.041 provides that "a person may make an inter vivos conveyance of an estate of free hold or inheritance that commences in the future in the same manner as by a will." It even gives the children the right of approval on any changes that might be made by Garza, reflecting the statutory obligations of a life tenant in the property code.

8.5     Plaintiffs pray that this Honorable Court declare that Johnny Montoya Garza has an undivided one-half life interest in the real property the subject of this suit pursuant to this document and that it validly conveys title to the property to John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells subject to the life estates of Elvira Aguilar and Johnny Montoya Garza.

8.11    In the alternative Johnny Montoya Garza asks this Honorable Court to find that he is a done of one-half interest in the real property by reason of the memorialized gift or transfer by

8

Elvira Aguilar and for reason that he has made valuable and permanent improvements to the property.

8.11    Plaintiffs seek the attorneys' fees and costs under the Tex. Civ. Prac. & Rem. Code Sec. 38.001 *et seq.* awardable to prevailing parties.

## IX.   TRESPASS TO TRY TITLE – SUPERIOR RIGHT, TITLE AND INTEREST

9.1    In the event the Lemus deed is not declared void, Plaintiffs seek judgment by this Honorable Court that their right, title and interest in 106 Cameo, San Antonio, Texas is superior in all respects to that asserted by Irma Lemus and Manuel Lemus, Jr.

9.2    Plaintiffs would show that Section 13.001(b) Tex. Prop. Code provides that an unrecorded instrument is fully binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay valuable consideration *or* who has notice of the instrument.

9.3    The Lemus defendants fraudulently obtained their deed with full knowledge of Garza's ownership interest in the property and that Elvira Aguilar intended the property to ultimately go to John Rene Aguilar, Johnny B. Wells and Laura Ashley Wells. The Lemuses wrongfully had the incapacitated Elvira Aguilar supposedly sign the instrument with knowledge and intent to defraud and dispossess Garza and the grand-children of the right to their own home.

9.4    The Lemus defendants fraudulently obtained their deed without consideration.  By Irma Lemus's own admission, the consideration for the deed was her "love and affection."

9.5    Irma Lemus is a statutory heir.   Manuel Lemus, Jr. is her spouse and bound by his own knowledge of the prior deed.

9

9.6    Therefore, Plaintiffs request that this Honorable Court find, pursuant to Tex. Prop. Code Sec. 13.001(b), that Plaintiffs title is superior to that of Irma Lemus and Manuel Lemus, Jr. and adjudge the deed of January 7, 2009 invalid to convey the title to the property.

9.7    Plaintiffs would additionally show that Tex. Civ. Prac. Rem. Code § 16.034 provides that in a suit for the possession of real property, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court shall award costs and reasonable attorney's fees to the prevailing party.

## X.    DEMAND FOR PAYMENT FOR IMPROVEMENTS TO THE PROPERTY

10.1    In the alternative, in the event this Honorable Court does not find the Lemus deed void, or that Elvira Aguilar had previously conveyed the property at 106 Cameo to the Plaintiffs, then Johnny Montoya Garza requests that this Honorable Court order Defendants to pay him for the reasonable value of the improvements made to the home.

10.2    The costs of said improvements together with interest paid on the home improvement loan, and the reasonable value of his labor are in excess of $85,000. Garza filed a Mechanic and Materialman's Lien on the property on May 28, 2010 prior to Elvira Aguilar's death. This figure does not include the increase in the value of the property due to the improvements.

10.3    Should his claim to legal title fail, Plaintiff prays this Honorable Court to find and rule that he retains a legal and equitable interest in the property for improvements which he made, for which he has not been compensated, and to order Irma Lemus and Manuel Lemus, Jr. to pay him compensation of $85,000 together with pre-judgment and post-judgment interest plus attorneys fees and costs for the improvements to the property.

10

## XI.   NO GOOD FAITH CREDIT TO LEMUSES FOR ALLEGED IMPROVEMENTS

11.1    Defendants have produced documents indicating that they may claim they have made improvements to the property at 106 Cameo, for which they should be compensated. Defendants have not responded to a request to inspect the premises and Plaintiffs deny that any improvements have been made, or are of the value Defendants may contend.

11.2    Tex. Prop. Code Sec. 22.021 provides that a defendant in a trespass to try title action who is found not to be the rightful owner may make a claim for improvements to the property on a finding that he possessed the property in *good faith.*

11.3    Even if there should be a finding of good faith possession, the party who is not the rightful owner may recover for improvements *only if* they exceed the value of their use and enjoyment of the property, whether they occupied it or not.   Defendants enjoyed the use of the property from the date of the deed.

11.4    Plaintiffs were deprived of the use and enjoyment of the property by Defendant's wrongful taking in total derogation of the known rights of the Plaintiffs and respectfully request this Honorable Court to deny aand all claims for improvements by the Lemuses for their bad faith.

## XII.   ATTORNEYS FEES AND COSTS

12.1    Plaintiffs were required by Defendant's wrongful possession of the property to incur reasonable and necessary attorneys' fees and costs, for which they seek judgment against Defendants.

12.2        Plaintiffs are entitled attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code, and requests this Honorable Court to award the same on proof thereof.

11

12.3    Tex. Civ. Prac. Rem. Code § 16.034 provides that in a suit for the possession of real property, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court shall award costs and reasonable attorney's fees to the prevailing party, and seek such award of attorneys' fees and costs against Defendants.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs JOHNNY MONTOYA GARZA, JOHN RENE AGUILAR, LAURA ASHLEY WELLS, and JOHNNY B. WELLS respectfully pray that this Honorable Court find, adjudge, declare and decree

a.  That the January 7, 2009 will from Elvira Aguilar to Irma Lemus and Manuel Lemus is void by reason of the mental incapacity of Elvira Aguilar to execute the same;

b.  That the March 11, 2005 instrument signed by Elvira Aguilar be declared a valid deed of conveyance and an acknowledgment of one-half of the ownership in the real property at 106 Cameo to Johnny Montoya Garza;

c.  That the March 11, 2005 instrument signed by both Elvira Aguilar and Johnny Montoya Garza is a valid conveyance of the property at 106 Cameo to John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells;

d.  That the title conveyed by the March 11, 2005 document of conveyance to plaintiffs is superior to the January 7, 2009 conveyance to defendants;

e.  That Johnny Montoya Garza made permanent improvements to 106 Cameo in reliance on the parol gift of one-half ownership of the property, and that such a transfer is enforceable as a valid conveyance of the property;

f.  That Johnny Montoya Garza is entitled to compensation by reason of improvements under a Mechanic and Materialman's lien.

g.  That defendants took possession of the property in bad faith and wrongfully excluded plaintiffs, and may not recover for any purported improvements to the property;

h.  That Defendants are liable to Plaintiffs for their attorneys' fees and costs for which let judgment issue;

12

FILED
4/11/2014 2:57:25 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Monica Hernandez

## CAUSE NO. 2012-CI-00251

| | | |
|---|---|---|
| JOHHNY M. GARZA<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | 225th JUDICIAL DISTRICT |
| IRMA LEMUS and<br>MANUEL LEMUS, Jr.<br>Defendants. | §<br>§<br>§<br>§ | BEXARC COUNTY, TEXAS |

### DEFENDANTS' FIRST AMENDED ANSWER AND COUNTER-CLAIM

COME NOW IRMA LEMUS and MANUEL LEMUS, JR., Defendants in the above-titled and numbered cause and file this First Amended Answer to Plaintiff's suit, and would show the Court the following:

### I. GENERAL DENIAL

1.      Defendants deny, each and every, all and singular, the allegations in Plaintiff's and Intervenors' Original Petition and Amendments thereto, and demand strict proof thereof as required by the Texas Rules of Civil Procedure.

### II. SPECIFIC DENIALS

2.      Defendants specifically deny that the writing attached as Exhibit "A" to Plaintiffs' petition is a holographic will in that it does not meet the elements as required by section 60 of the Texas Probate Code.

3.      Defendants specifically deny that the writing attached as Exhibit "A" is a valid conveyance. The writing lacks a specific description, does not contain operative words or words of grant showing an intention to convey title to a real property interest, and the writing is not acknowledged.

1

## III. VERIFIED DENIAL

4. Defendants allege and aver that Plaintiff Johnny M. Garza lacks legal capacity to sue and/or Plaintiff Johnny M. Garza is not entitled to recover in the capacity in which he sues in that he is not a lawful heir to Elvira Aguilar.

## IV. COUNTERCLAIM

5. In the alternative, Defendants allege and aver that they have an equitable lien on the property as a result of improvements, repairs, maintenance, upkeep and the payment of the taxes on the real property made the basis of this suit. Should Plaintiffs prevail on their claim, Plaintiffs would be unjustly enriched from the benefits of Defendants' labor and money.

## V. ATTORNEY'S FEES

6. It was necessary for Defendants to procure the services of Ana Laura Hessbrook, an attorney duly licensed in the State of Texas, to defend against this lawsuit brought by Plaintiffs. The fees charged by Ms. Hessbrook are reasonable in Bexar County, Texas, necessary to protect and defend Defendants' rights, equitable and just.

## VI. PRAYER

7. WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs take nothing by their suit. Defendants further pray that the Court enter judgment that Defendants are the lawful grantees of the Warranty Deed attached as Exhibit "1" hereto. Defendants further pray for an award of reasonable, necessary, equitable and just attorney's fees which have been incurred by Defendants as a result of this litigation and are properly awarded pursuant to Texas Civil Practice

2

and Remedies Code section 37.009. In the alternative, Defendants pray the court enters judgment that Defendants possess an equitable lien property as a result of improvements, repairs, maintenance, upkeep and the payment of the taxes on the real property made the basis of this suit. Defendants pray for such other and further relief to which they may be justly entitled. Defendants pray for general relief.

Respectfully submitted

LAW OFFICE OF ANA LAURA
HESSBROOK
4100 NW LOOP 410, SUITE 105
SAN ANTONIO, TX 78229
Tel: (210) 706-9466
Fax: (210) 706-9467

By: /S/ Ana Laura Hessbrook
ANA LAURA HESSBROOK
State Bar No. 00791481
Email: hessbrook@sbcglobal.net
Attorney for Petitioner
Annette Ramirez

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded in accordance with the Texas Rules of Civil Procedure on April 11, 2014 to the following:

Anita J. Anderson
LAW OFFICE OF ANITA J. ANDERSON
303 W. Sunset, Suite 103
PO BOX 830722
San Antonio, Texas 78283
Telephone: (210) 533-8726
Telecopier: (210) 633-0989
*Attorney for Plaintiffs*

*Ana Laura Hessbrook*
ANA LAURA HESSBROOK

4

## VERIFICATION

STATE OF TEXAS   §

COUNTY OF BEXAR   §

BEFORE ME, the undersigned authority, personally appeared Ana Laura Hessbrook on April 11, 2014, who, after being duly sworn, stated the following:

"My name is Ana Laura Hessbrook, I am the attorney for Irma and Manuel Lemus. I have personal knowledge of the facts stated within Defendants' First Amended Original Answer, and they are true and correct to the best of my knowledge."

_____
ANA LAURA HESSBROOK

SWORN TO AND SUBSCRIBED BEFORE ME, by Ana Laura Hessbrook on April 11, 2014.

_____
NOTARY PUBLIC, STATE OF TEXAS

ROSEMARY DELEON
My Commission Expires
March 7, 2017

5



CAUSE NO. 2012-CI-00251

| JOHNNY MONTOYA GARZA, | § | IN THE DISTRICT COURT |
| JOHN RENE AGUILAR, JOHNNY B. | § | |
| WELLS and LAURA ASHLEY WELLS | § | |
| | § | 225th JUDICIAL DISTRICT |
| V. | § | |
| | § | |
| IRMA LEMUS and MANUEL LEMUS, JR. | § | BEXAR COUNTY, TEXAS |

## CORRECTED FINAL JUDGMENT

BE IT REMEMBERED that on the 7th day of July, 2014 Plaintiffs' petition for declaratory judgment and trespass to try title as to the ownership of the real property 106 Cameo, San Antonio, Texas and Defendants' counterclaims thereto, came on to be heard for trial on the merits in the 57th Judicial District Court of Bexar County.

Plaintiffs Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells appeared in person and through their attorney of record. Defendants Irma Lemus and Manuel Lemus, Jr. appeared in person and by their attorney of record. A jury was waived.

After hearing the evidence offered by the parties and their witnesses, and after hearing the authorities and arguments presented by counsel, this Court is of the opinion that the relief sought is granted or denied as follows, and enters the following judgment.

I.    DEFENDANTS' DEED OF JANUARY 7, 2009 IS VOID FOR WANT OF CAPACITY

1.1    Plaintiffs Johnny Montoya Garza, partner to Elvira Aguilar, and her grand-children John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, brought suit to set aside and declare as *void for want of capacity* that certain deed dated January 7, 2009 reciting a conveyance from Elvira Aguilar of her residence at 106 Cameo, San Antonio, Texas to her daughter Irma Lemus and son-in-law Manuel Lemus, Jr. , a true and correct copy of which is made a part of this judgment as Attachment "A."

· Document Scanned as filed.

1.2     Elvira G. Aguilar was the title owner of the two story home at at 106 Cameo, San Antonio, Texas 78214, which the legal description is:

> Lot 4, Block 2, NCB 12291, Campo Gardens Addition, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 3525 Page 192, Deed and Plat Records of Bexar County, Texas.

1.3     The court having heard the testimony of the parties and witnesses, and having reviewed the medical records of the nursing home at which she was a resident, finds based on a preponderance of the evidence that on January 7, 2009, Elvira Garibay Aguilar was suffering from advanced Alzheimer's disease and did not have the requisite mental capacity to understand the nature of making the conveyance or its effect in transferring ownership of the property to Irma Lemus and Manuel Lemus, Jr.

1.4     Therefore, IT IS ORDERED, ADJUDGED AND DECREED that Attachment "A", the deed recorded at Book 13815 Page 441 of the Bexar County Deed Records, dated January 7, 2009 reciting a conveyance of the property at 106 Cameo, San Antonio, Texas from Elvira Aguilar, Grantor, to Irma Lemus and Manuel Lemus, Jr., Grantees, is VOID for want of capacity of the Grantor.

## II.     "WILL" OF MARCH 7, 2005 IS EFFECTIVE AS DEED

2.2     Plaintiffs further petitioned for declaratory judgment that the document labelled as the "Will" of Elvira G. Aguilar and Johnny Montoya Garza, while not effective as a will, nevertheless effected a present transfer of title of 106 Cameo, San Antonio, Texas, to Plaintiffs John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, subject to a life estate of Elvira Aguilar and Johnny Montoya Garza.     A true and correct copy of the same is included in this judgment as Attachment "B."

2.3    The court having considered the evidence and reviewed the document of March 5, 2005, finds that Attachment "B" shows a present intent by Elvira Aguilar to convey the property at 106 Cameo, San Antonio, Texas to John Rene Aguilar, Laura Ashley Wells, and Johnny B Wells. The Court further finds that the document sufficiently describes the property, and in all ways, satisfies the requirements of a deed and conveys good and valid title to said parties and their petition for declaratory relief should in all things be GRANTED.    Therefore, it is hereby

2.4    ORDERED, ADJUDGED, and DECREED that the document of March 7, 2005, Attachment "B," meets the requisites of a good and valid <u>GIFT DEED</u> and transfers title from Elvira G. Aguilar, as grantor, of ownership of the premises at 106 Cameo, San Antonio, Texas, to John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, as grantees, and that JOHN RENE AGUILAR, LAURA ASHLEY WELLS, and JOHNNY B. WELLS are title owners of the premises at 106 Cameo, San Antonio, Texas.

III.    OWNERSHIP INTEREST OF JOHNNY MONTOYA GARZA

3.1    Plaintiff Johnny Montoya Garza, the personal partner of Elvira Aguilar for over twenty years, also brought suit for declaratory judgment that the same document validly acknowledged an oral conveyance by Elvira Aguilar to him of one-half ownership interest in the property, and that this acknowledgement, together with valuable improvements he made on the house, established a one-half ownership interest in the property in his favor.

3.2    The Court finds that the document of March 7, 2005, Attachment "B," and the evidence submitted at trial do not establish a one-half ownership interest to Garza in the property.

3.3    Therefore, it is ORDERED, ADJUDGED AND DECREED that Johnny Montoya Garza's request for declaratory judgment that he has an undivided one-half interest in the property is in all things DENIED.

3.4    The Court further finds that the Mechanics and Materialman's Lien filed by Johnny Montoya Garza is not timely filed and invalid <u>and is hereby set aside.</u>

## IV.    DEFENDANTS' CLAIMS FOR REIMBURSEMENT OF IMPROVEMENTS DENIED

4.1    Defendants Irma Lemus and Manuel Lemus, Jr. brought a counter-claim against Plaintiffs for improvements made to 106 Cameo, San Antonio, Texas.    The court finds that the improvements were made by the Lemuses with knowledge that other parties claimed legal title to the property, and therefore have not established the good faith requirement of Tex. Prop. Code Sec. 22.021 for their claim for improvements to the property.  The court further finds that the value of any improvements made is outweighed by the value of the use and occupation of the premises by the valid owners.  Therefore it is

4.2    ORDERED, ADJUDGED AND DECREED that Defendants claims for the value of improvements to the property are DENIED and that Defendants take nothing by their suit.

## V.    DECLARATION OF HEIRSHIP

5.1    Elvira G. Aguilar died intestate on July 1, 2010.   There was no application for declaration of heirship and administration of her estate.   <u>The parties sought</u> a declaration of heirship in this cause of action.   James Rodriquez, Esq. was appointed attorney *ad litem*, and reported that there were no other heirs which could be determined other than the following:

5.2    The court finds Elvira G. Aguilar was the mother of Irma Lemus, Irene Aguilar Lambert, Annette Aguilar Wells, Nanette Wells, and John David Aguilar.   Annette Aguilar Wells predeceased Elvira Aguilar leaving as her descendants John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells.  Nanette Aguilar predeceased Elvira Aguilar and left no descendants.

5.3 Therefore, this court FINDS and DECLARES that the statutory heirs of Elvira Garibay  Aguilar are Irma Lemus, daughter; Irene Aguilar Lambert, daughter, John David Aguilar, son, and John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells, grand-children.

5.4 The court further finds that John David Aguilar and Irene Aguilar Lambert were duly served as necessary parties. They appeared and answered in this case, and were dismissed as parties when they quitclaimed any interest in the subject property they might have through the estate of Elvira Aguilar in favor of Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, and Johnny B. Wells.

## VI. ATTORNEYS FEES AND COSTS

6.1 The court finds that pursuant to the provisions of the Texas Declaratory Judgments Act and the Texas Property Code, attorney's fees and costs should be awarded to the Plaintiffs. The Court further finds that attorney's fees in the amount of Sixteen Thousand Seven Hundred and Fifty Dollars and no/100s ($16,750) are reasonable and necessary and that said fees and costs of court are assessed against Defendants IRMA LEMUS and MANUEL LEMUS, Jr. for payment to Plaintiffs JOHN RENE AGUILAR, LAURA ASHLEY WELLS, AND JOHNNY B. WELLS, for which let judgment issue.

6.2 The Court finds that attorney's fees for the services of the attorney *ad litem* are Three Hundred and Fifty Dollars and no/100s ($350.00) and assesses the same for payment by Plaintiffs.

Except for any injunctive relief which may be separately granted in this cause of action, any request for relief not expressly granted herein is denied.

SEP 2 3 2014

Signed this **23** day of **September**, 2014.

HON. ANTONIA ARTEAGA, Presiding

APPROVED AS TO FORM:

Anita J. Anderson
SBN 01165955
LAW OFFICE OF ANITA J. ANDERSON
POB 830722
San Antonio, Texas 78283
(210) 533-8726
Facs. 533-0989
ajanderson1111@gmail.com

*For Plaintiffs Johnny Montoya Garza, John Rene Aguilar, Laura Ashley Wells, Johnny B. Wells*

Ana Laura Hessbrook
SBN 00791481
LAW OFFICE OF ANA LAURA HESSBROOK
4100 N.W. Loop 410 Suite 105
San Antonio, Texas 78229
(210) 706-9466
Facs: 706-9467
hessbrook@sbcglobal.net

*For Defendants Irma Lemus and Manuel Lemus, Jr.*

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# WARRANTY DEED

| | |
|---|---|
| STATE OF TEXAS § | |
| § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF BEXAR § | |

THAT, ELVIRA AGUILAR, hereinafter called Grantor (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable considerations to Grantor in hand paid by IRMA A. LEMUS and MANUEL V. LEMUS, JR., hereinafter called Grantee (whether one or more), the receipt of which is hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto Grantee, whose mailing address is as hereinafter set forth, the following described real estate, together with all improvements thereon, situated in Bexar County, Texas, being more particularly described as follows, to-wit:

Lot 4, Block 2, New City Block 11291, CAMPO GARDENS ADDITION, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 3525, Page 192, Deed and Plat Records of Bexar County, Texas, also known as 106 Cameo, San Antonio, Texas.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging, unto the said Grantee, Grantee's heirs, successors and/or assigns forever. And Grantor does hereby bind Grantor, Grantor's heirs, executors, administrators, successors and/or assigns TO WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Grantee herein, Grantee's heirs, successors and/or assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance and the warranties of title given herein are made subject to any and all restrictions, easements, setback lines, covenants, conditions and reservations, of record affecting the property herein conveyed.

EXECUTED ON THE FOLLOWING DATE: January ___, 200_

_____
ELVIRA AGUILAR

(ACKNOWLEDGEMENT)

| | |
|---|---|
| STATE OF TEXAS § | |
| COUNTY OF BEXAR § | |

This instrument was ACKNOWLEDGED before me, on this the ____ day of _____, 200_ by ELVIRA AGUILAR.

KIMBERLY L. WYNNS
Notary Public, State of Texas
My Commission Expires
January 18, 2009

_____
Notary Public, State of Texas

This instrument was prepared solely from information and on instructions given to this office by our client. No title opinion or other information has been furnished to or has been, or is being, given by this office to any person in connection with the preparation of this instrument or the accuracy of the information contained herein.

GRANTEE'S MAILING ADDRESS:
AFTER RECORDING RETURN TO
GRANTEE AT:
Irma A. Lemus
Manuel V. Lemus, Jr.
27213 Bent Trail
Boerne, TX 78006

PREPARED IN THE OFFICE OF:
WEST & WEST ATTORNEYS, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230

Attachment "A"

Will from Johnny Montoya Garza
And Elvira G. Aguilar

We the above people agree that
the house at 106 Cameo San Antonio
Texas 78214 belongs to Elvira G.
Aguilar And Johnny Montoya Garza
Part owner on 2nd story of house
was built because of the children
that were awarded to Ms Elvira
G. Aguilar at the time of her
daughters death the state awarded
the children to Ms Elvira g Aguilar
then we decided to Add onto the
house to make Rooms for the
children there for we agree
that the house be evenly owned
By John Rene Aguilar Laura Ashley
Wells And Johnny B. Wells. Nothing
will be done to the house with-
out the authorization of John
Rene Aguilar Johnny B. Wells And
Laura Ashley Wells. In Case of a
disagreement on the Aguilar Part
And the children Listed above
have the final Say in what is
to be done to the house at

Attachment "B"

106 Cameo SanAntonio Texas
78214.

John Rene must keep me
Informed of all dicissions
that I Johnny Montoya Garza
Can be as helpful to the Children
So that there is no harsh
diseissions made. I Johnny
Montoya Garza am expecting
that all family members
except this will that Elvira G
Aguilar And Johnny Montoya Garza
have decided to award the house
at 106 Cameo to the Children
Listed Previously I Johnny Montoya
Garza Am positivly Sure that
there will be no disagreement
between the families. So I
hope tha John David Aguilar And
Nannette Aguilar And other
family members Respect the
Wishes of Elvira G Aguilar +
Johnny Montoya Garza Please
have all family members Sign
this agreement will May God be
with you All in these hard times
Please agree to your Mom And
over →

My discission. We had discussed this between us when the children were put in our hands

Thank-you All
Very much
Johnny Montoya
&
Elvira G. Aguilar
Signed this day
of March 11-05

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*February 06, 2015*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _____

DANIEL GALAN, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*